INTERNATIONAL PIPING SYSTEMS,
LTD., Appellant

v.

M.M. WHITE & ASSOCIATES, INC. and
M.M. White, Individually, Appellees.

No. B14–90–00629–CV.

Court of Appeals of Texas,
Houston (14th Dist.)

May 14, 1992.

Rehearing Denied June 18, 1992.

John A. Buckley, Jr., Andrew J. Mytelka, Galveston, for appellant.

Douglas Andrew King, Jr., Larry W. Bass, Houston, for appellees.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

JUNELL, Justice.

Appellees M.M. White & Associates, Inc. and M.M. White (collectively known as White) sued appellant, International Piping Systems, Ltd. (IPS), for breach of contract, fraud, quantum meruit, failure to deal in good faith, and detrimental reliance on promises made. At the conclusion of the evidence, the trial court granted appellant's motion for instructed verdict on the claim of failure to deal in good faith. The remaining issues were submitted to the jury and it returned a verdict in favor of appellees. Based upon that verdict, the trial court rendered judgment in favor of appellees in the amount of $215,376.73 for breach of contract, plus attorney's fees, prejudgment and postjudgment interest, and costs of court. Appellant brings five points of error alleging: (1) there is no evidence or insufficient evidence that the parties had a meeting of the minds on the essential terms of the agreement; (2) there is no evidence or insufficient evidence on which to base the award of damages based upon a contractual agreement; (3) the employment contract violated the Statute of Frauds and was unenforceable; (4) the damages awarded in jury questions 2, 8, and 10 are inconsistent and in conflict; and (5) the trial court erred in not applying a six percent (6%) prejudgment rate of interest. We affirm.

In October of 1983, M.M. White arranged a meeting in Baton Rouge, Louisiana with John Calmes, president of IPS; Jim Dixon, vice-president of sales for the holding company which included IPS; and Bruce Brown, sales manager for IPS. White desired to become an IPS sales representative. White had previously formed M.M. White & Associates, Inc. for the purpose of providing purchasing and marketing services to clients in the Houston area. IPS, organized in 1982 in Louisiana, specialized in pipe fabrication and pipe bendings. White believed IPS would be a likely candidate for him to represent.

Following a tour of the IPS facilities, a general discussion was held regarding White's qualifications to be an IPS sales representative. White and Brown adjourned to discuss a possible agreement. After some discussion, Brown asked White to return to Houston and prepare and send a letter to IPS regarding White's thoughts on becoming an IPS sales representative. White complied and forwarded the letter dated October 18, 1983. Enclosed with the letter was a list of potential customers which White was interested in contacting on behalf of IPS.

On November 14, 1983, Brown met White in Houston. Prior to this meeting White had prepared a proposed employment agreement. During the meeting Brown was given a copy of the proposed agreement, and the two men discussed it. The specific items covered in the proposed agreement were: a one year period of employment from December 12, 1983, non-cancellable without cause; the territory to be covered by White (no specific geographic locations were designated, only customers); commissions to be paid White; and a ninety (90) day residual period after termination for commissions. Brown and White agreed that Brown would map out the geographic scope of the proposed agreement.

The exact commission percentage was left blank, and the proposed agreement was unsigned. Brown informed White that the proposed agreement would have to be reviewed by IPS and its legal department.

Thereafter, White received a letter from Brown dated November 17, 1983, confirming that White was authorized to represent IPS in the Houston area. The letter stated that White's commission for any sale would be ten percent (10%). The letter further stated that the "commission schedule" and territory to be covered would be amended and more precisely defined in the actual contract. There is a dispute over the meaning of the term "commission schedule" as to whether it referred to the amount or the timing of the compensation.

In December of 1983, White returned to Baton Rouge, Louisiana and met with Dixon and Brown. Later that month IPS provided White with business cards showing the IPS logo. On December 27, 1983, IPS wrote a letter to White listing potential customers he should develop.

It appears that from December 1983 through April 12, 1984, White and his company performed services as sales representatives for IPS. In March of 1984, George Shephard was employed as the new president of IPS. Shephard terminated Brown and employed Dave Chapman to be IPS's new sales manager. Shephard called a meeting on April 12, 1984 between himself, Chapman and White. Subsequent to this meeting White was terminated and thereafter brought suit against IPS.

In its first point of error appellant alleges that there is no evidence or, in the alternative, insufficient evidence to support a finding that the parties had a meeting of the minds on the essential elements of the agreement made the basis of the contractual recovery.

■ When "no evidence" and "factual insufficiency" points of error are raised on appeal, the appellate court will address the "no evidence" or legal insufficiency point first. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). In reviewing legal insufficiency points the reviewing court shall consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregards all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex. 1988); *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). An appellate court is limited to reviewing only the evidence tending to support the jury findings in a "no evidence" point of error. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex. 1988). If the appellate court finds any evidence of probative force to support the complained of finding, the point of error must be overruled. *Id.* If there is more than a scintilla of evidence to support the finding, then the "no evidence" challenge must fail. *Stafford,* 726 S.W.2d at 16. If the evidence gives some reasonable basis for differing conclusions by reasonable minds about the existence of the vital fact, it amounts to more than a scintilla of evidence. *Kindred v. Con/Chem. Inc.,* 650 S.W.2d 61, 63 (Tex.1983). If the appellate court finds evidence to support the complained of finding, the court will then review the claim of factual insufficiency.

■ In reviewing a factual insufficiency challenge the court of appeals must examine all of the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986). After considering and weighing all of the evidence, the appellate court will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ Jury question number one asked the jury to determine whether there was an agreement between the parties and whether IPS had failed to comply with such agreement, if any. By its answer the jury found that there was an agreement and IPS had failed to comply with it. Appellant complains that there was no evidence or insufficient evidence to show a meeting of the minds on essential terms of the agreement.

The question and instructions submitted to the jury on the "agreement" issue did

not ask the jury about a meeting of the minds on essential terms. If appellant desired such an issue or instruction, it should have objected and tendered in substantially correct form the desired issue or instruction. TEX.R.CIV.P. 278. Thus, the focus of review is whether there was evidence to support the question submitted to the jury, i.e. was there an agreement, not whether there was a meeting of the minds regarding essential terms. Nor do we have to review the question of sufficiency as to the breach of the agreement for appellant has not raised that issue before this court.

Reviewing the legal insufficiency or "no evidence" challenge first, viewing only the evidence favorable to the jury's finding, we find that there was more than a scintilla of evidence to support the jury's finding that there was an agreement.

The record reflects that White met with Brown on November 14, 1983, and the two men went over and discussed the "proposed agreement" drawn up by White. Brown stated he would have to go back to IPS for final approval. That approval was received by White through the November 17, 1983, letter from IPS to White stating that as of November 17, 1983, White was authorized to act as a sales representative for IPS. Further, the letter set a ten percent (10%) commission rate, a term left blank in the agreement proposed by White. White testified that he had an agreement with IPS to act as their authorized sales representative as of November 17, 1983. The letter sent by IPS and White's testimony amount to more than a scintilla of evidence to support the jury's finding that there was an agreement between White and IPS. This evidence alone is sufficient to defeat the "no evidence" challenge brought by appellant IPS.

We now turn to appellant's contention that the evidence is factually insufficient to support the jury's finding that there was an agreement between White and IPS.

Once again the focus is on the meeting between White and Brown on November 14, 1983, and the letter of November 17, 1983. White testified that at the meeting with Brown, sales manager for IPS, a complete discussion was had regarding all pertinent terms of the agreement. And while Brown had to take the proposal back to IPS for approval, that approval was forthcoming by virtue of the November 17, 1983, letter which stated in pertinent part:

> ... you are authorized to represent International Piping Systems in the Houston area. Your commission for any sale will be 10%. It is understood that the commission schedule and the territory will be amended and more precisely defined in the actual contract.

White testified that his agreement with IPS was to run for one year beginning November 17, 1983. White presented expert testimony that such one year agreements were standard in the industry. IPS's own expert testified that all agreements IPS had with other sales representatives contained one year initial terms, though he went on to state that this was not the norm for the industry.

There was testimony on behalf of IPS stating that Brown did not have the authority to agree to such terms and Brown himself testified that as of November 17, 1983, the terms of the contract had not yet been settled on. However, Brown himself testified that he was given authority to "bring on" White as a sales representative.

While the evidence is conflicting as to whether or not Brown had authority to bring White on and as to whether the terms initially agreed to would change, there is more than enough evidence to support the jury's finding that an agreement existed between White and IPS. The jury was entitled to believe White's testimony. The November 17, 1983, letter defined commission, territory and starting date of employment. IPS even refers to this letter as an interim agreement. The jury's finding that there was an agreement is not so against the great weight and preponderance of the evidence as to be manifestly unjust. The factual insufficiency challenge by IPS is overruled.

Beyond the fact that there is sufficient evidence to support the jury's finding that there was an agreement, ap-

pellant is estopped to complain about this issue. In his final argument to the jury appellant's trial attorney stated:

> The first issue simply put is was there an agreement? Yeah, there was an agreement. The fight is not over whether or not there was an agreement. Yeah, there was an agreement. There is no argument there was some type of agreement.
>
> \* \* \* \* \* \*
>
> So when you get to No. 1, yeah, there was an agreement.

Appellant's counsel not only invited the jury's answer to question number one, he gave them the answer four times: there was an agreement. A party may not complain of error which he has invited. *Evans v. Covington*, 795 S.W.2d 806, 809 (Tex. App.—Texarkana 1990, no writ); *Ideal Mut. Ins. Co. v. Sullivan*, 678 S.W.2d 98, 100 (Tex.App.—El Paso 1984, writ dism.'d). A party is estopped to complain of any error which occurred at his request. *Shafer v. Bedard*, 761 S.W.2d 126, 131 (Tex. App.—Dallas 1988, no writ). Therefore, appellant may not now complain that there was no evidence or insufficient evidence to support the jury's finding that there was an agreement because appellant's trial counsel explicitly told the jury that an agreement did in fact exist. Appellant's first point of error is overruled.

In its second point of error appellant contends that there was no evidence or insufficient evidence to support the actual damages awarded to appellees. Using the standards of review stated above, we will review the no evidence contention first.

White testified that under the agreement with IPS he was entitled to ten percent (10%) of the total sales by IPS within White's territory during the one year employment period, plus sales made within ninety days after his employment period ended. White testified that his period of employment was from November 17, 1983, the date of the letter from IPS stating that White was authorized to act as a sales representative, through November 16, 1984. The November 17, 1983 letter also stated that White's commission would be ten percent (10%). This letter was introduced into evidence and was before the jury. White presented evidence showing that IPS sales in his territory from November 17, 1983, through February 16, 1985, (the one year employment period plus the 90 day residual period) totaled $2,468,-206.45. Thus, a ten percent commission on this amount would yield $246,820.65. The damage question required the jury to subtract any expenses White saved by not performing. White testified that he incurred labor costs and expenses in the amount of $12,474.67 from November 17, 1983, to April 12, 1984, the day of his termination. These labor costs and expenses averaged approximately $2,575.00 per month. Projecting that monthly average for the seven months remaining on the one-year contract, White would have incurred labor costs and expenses of approximately $18,000.00 had he not been terminated. He saved that amount by not performing the last seven months. Under the court's instructions in its charge, the jury was to deduct that amount from the total commission due. Had just that amount been deducted, the damages finding would have been approximately $228,000.00. The jury actually found damages of $215,-376.73. Thus, viewing only the evidence favorable to the jury's finding, we hold that there was more than a scintilla of evidence to support the jury's finding on damages. Appellant's "no evidence" point is overruled.

■ Next, this court must determine whether the evidence was factually sufficient to support the jury's damage finding. We must examine all of the evidence and determine whether the jury's finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176.

Each party presented evidence of damages. As stated above, White testified and presented exhibits showing that IPS sales in his territory during the employment period were $2,468,206.45. White presented evidence that he was entitled to a commission of ten percent (10%) on those sales, less expenses incurred to produce those

sales, for a total of approximately $215,-000.00. Appellant, through Dixon, submitted evidence that White's commission was not ten percent (10%), but rather a sliding commission schedule the commission decreasing as the total sales increased. Further, IPS presented evidence that the total sales figures presented by White were in error; that in fact the total sales in White's territory through April 12, 1984, the date of White's termination, were $53,-803.35; and even if the ninety day residual period was included, the amount of total sales would only be $58,562.35. IPS argued that even with a ten percent (10%) commission White was entitled to only $5,856.44. The evidence presented by appellees as to total sales covered the entire "contracted" employment period, one year plus the ninety day residual period, not just through the date of termination. The jury was entitled to find from the evidence presented that the agreement between White and IPS ran from November 17, 1983, through November 16, 1984, and to use this time period in calculating damages.

IPS points out that in calculating the total sales by IPS, the jury must have included a job done for H.B. Zachry for $1,800,000.00. IPS argues that this job should not have been included in the total sales because: (1) H.B. Zachry was not "given" to White as a client; (2) H.B. Zachry was not within White's territory; (3) the H.B. Zachry job was outside of White's effective employment period; and (4) White had nothing to do with the H.B. Zachry job.

White testified that H.B. Zachry was given to him as a client from the beginning of his employment with IPS because he had contacts within the company, and White presented evidence that the H.B. Zachry job was bid on by IPS on July 13, 1984, within the employment period (November 17, 1983, through November 16, 1984). Further, Thomas Glascock, contract manager for IPS, testified that the H.B. Zachry job was booked not later than a date between January 28, 1985, and February 11, 1985. There was evidence presented by White which showed that the ninety day residual period did not expire until February 16, 1985, which is subsequent to the last date the H.B. Zachry job could have been booked according to the contract manager for IPS.

Thus, it is clear that the evidence concerning IPS's total sales and the time periods to be used in deducing total sales is in conflict. Specifically, appellant and appellees presented opposing evidence concerning the $1,800,000.00 H.B. Zachry job. Further, evidence regarding the commission percentage White was to be paid is in conflict.

Having considered and weighed all of the evidence on the issue of damages, we hold that the evidence is not so weak or the jury's damage finding so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The jury was entitled to believe that White was entitled to and contracted for a ten percent (10%) commission on total sales for the period between November 17, 1983, and November 16, 1984, plus a ninety day residual period, and that H.B. Zachry was given to White as a client. There was sufficient evidence, though contradicted by appellant, to allow the jury to make the above findings. A court of appeals may not substitute its opinion for that of the trier of fact merely because it might have reached a different fact conclusion. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988); *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951). Therefore, appellant's factual insufficiency contention as to the jury's damage award is overruled. Appellant's second point of error is overruled.

In its third point of error appellant alleges that White's employment agreement was unenforceable because it violates the Statute of Frauds provision that a contract that cannot be performed within a year must be in writing. TEX.BUS. & COM. CODE ANN. § 26.01(b)(6). In reviewing appellant's contention, this court must first

determine whether the Statute of Frauds applies to the agreement in question.

The law provides, in pertinent part:

**§ 26.01 Promise or Agreement Must be In Writing**

(a) A promise or agreement described in Subsection (b) of the section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to:

. . . . .

(6) an agreement which is not to be performed within one year from the making of the agreement.

. . . . .

Tex.Bus. & Com.Code Ann. § 26.01.

■ Appellant contends the parties agreed on November 14, 1983, the date White presented the proposed agreement to Brown, that White would act as sales representative for IPS. The agreement proposed by White stated that the agreement was for a one year term. Thus, appellant argues that under the terms of the agreement proposed by White, the agreement could not be performed within one year because the agreement proposed by White stated that it would not expire until December 1, 1984, more than one year from November 14, 1983. Appellant next argues that even if the agreement were to expire on November 17, 1984 (one year after the letter authorizing White to represent IPS), the contract could still not be performed within one year of November 14, 1983. These contentions are not supported by the evidence. The evidence shows that when the proposed agreement was presented by White to Brown, Brown did not have the authority to state at that time whether or not White would be accepted as an IPS sales representative, but that he would first have to go back to Louisiana and confirm the issue with IPS. Thus, appellant's use of the November 14, 1983

date is in error. The evidence shows that the agreement began on November 17, 1983, the date of the letter authorizing White to act as an IPS representative, and was to run for one year. For an agreement to fall within the Statute of Frauds, it must appear from the terms of the agreement that performance cannot be completed within one year. *Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12, 14 (Tex.1957). The agreement between IPS and White was for one year and the obligations placed upon White by the agreement were performable within one year. Therefore, the Statute of Frauds is inapplicable to the agreement. Appellant's third point of error is overruled.

■ In its fourth point of error appellant contends the damages awarded to White in jury questions 2, 8 and 10 are inconsistent and in conflict.

In its Third Amended Original Petition, White asserted five separate causes of action against IPS. The three causes of action involved in jury questions 2, 8 and 10 are breach of contract (Question No. 2), quantum meruit (Question No. 8) and detrimental reliance (Question No. 10). In Question No. 2, the jury found White's damages resulting from IPS' breach of contract to be $215,376.73. In Question No. 8, the jury awarded White $12,000.00 in damages for quantum meruit, and in Question No. 10, the jury awarded White $1,438.67 for detrimental reliance. Appellant argues that these damage awards are predicated on the same material facts and are therefore in conflict.

■ In reviewing the jury findings for conflict, the threshold question is whether the findings are about the same material facts. *Bender v. Southern Pacific Transportation Co.,* 600 S.W.2d 257, 260 (Tex.1980). A court may not strike down jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled. *Id.* The court must "reconcile apparent conflicts in the jury's findings" if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other find-

ings considered as a whole. *Id. (quoting Ford v. Carpenter*, 147 Tex. 447, 216 S.W.2d 558, 562 (1949)). The court does not determine whether the findings may reasonably be viewed as conflicting; to the contrary, the question is whether there is any reasonable basis upon which the findings may be reconciled. *Id.*

With respect to Question No. 2, damages for breach of contract, the jury was properly instructed that in order to determine the proper measure of damages to which White was entitled it should make an effort to put White "in as good a position as that in which it would have been put by full performance of the agreement, that is, the amount due, if any under the agreement, less the expenses saved by not performing." *See Osoba v. Bassichis*, 679 S.W.2d 119, (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). That is, White was entitled to the commissions that would have been earned less expenses that would have been incurred earning those commissions. Thus, the facts the jury focused on in determining the answer to Question No. 2 were: total sales by IPS during the agreement period, the commission to which White was entitled, and the labor costs and expenses saved by White by not performing. The jury found that amount to be $215,376.73.

Question No. 8, the damage issue with respect to White's quantum meruit claim, required the jury to determine "the reasonable value of the compensable services, if any, performed by M.M. WHITE & ASSOCIATES, INC." The evidence showed that White's performance began on November 17, 1983, and that White was terminated by IPS on April 12, 1984. Because of the termination White was only able to perform compensable services for four months and twenty-six days. The question submitted to the jury required the jury to determine the value of the services actually performed by White for that period of time, not the amount White was entitled to had the agreement been fully performed. Thus, the jury was focusing upon a different set of facts from those in Question No. 2 and found only $12,000.00 in damages to White on the quantum meruit claim.

In Question No. 10, the damage issue relating to White's detrimental reliance claim, the court instructed the jury to consider only those damages which would put M.M. White & Associates, Inc., in the position in which it would have been had it not relied upon promises made by IPS. White testified that White & Associates had incurred $1,438.67 in expenses (not including labor costs) through April 12, 1984, the date of termination. This is the amount the jury awarded White in its answer to Question No. 10. Therefore, the jury was concentrating upon the amount of out-of-pocket money White had lost due to reliance upon IPS' promises. This is different from the facts focused upon in Question Nos. 2 and 8.

The jury was instructed as to the elements it could consider in its answers to the damage issues in Question Nos. 2, 8 and 10. The jury was not required to focus on the same material facts in arriving at its answers to those questions. Each cause of action asserted by White had a different measure of damages; therefore, the jury had to focus on different facts in order to answer each question. While each cause of action was most certainly based on the same totality of facts, each cause of action had different elements and different measures of damages. Since each question required the jury to focus upon different material facts, the jury's findings are not in conflict.

▮ Further, our liberal system of pleading allows a party to state his claims or defenses alternatively or hypothetically and to state as many claims as he has regardless of consistency. *Deal v. Madison*, 576 S.W.2d 409, 421 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.); Tex.R.Civ.P. 48. If a party pleads more than one theory of recovery or defense, normally he need not elect between them until after the verdict. *Deal*, 576 S.W.2d at 421. He is entitled to the greatest relief under either theory that the verdict and the evidence will support. *Id.* When White moved for entry of judgment based upon the jury's verdict, he elected to accept the contract damages

alone. When the trial court entered judgment, White was awarded the damages based on Question No. 2, the breach of contract issue, and was not awarded the damages arrived at by the jury in Question Nos. 8 and 10. Thus, even if a conflict had existed, it was reconciled by the trial court's recognition of the election when it entered the judgment. Appellant's fourth point of error is overruled.

In point of error number five appellant complains that the trial court committed reversible error in granting White prejudgment interest at a rate of ten percent (10%). Appellant relies on TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1987), which provides that when no specified rate of interest is agreed upon by the parties, interest at a rate of six percent (6%) per annum shall be allowed on all accounts and contracts ascertaining the sum payable.

This court has held in four cases that article 5069–1.03 does not apply in the calculation of interest if a fixed sum is not ascertainable from the face of the contract itself. *Sage Street Associates v. Northdale Constr. Co.*, 809 S.W.2d 775, 778 (Tex. App.—Houston [14th Dist.] 1991, writ granted); *Texas Gas Exploration Corp. v. Broughton Offshore Ltd. II*, 790 S.W.2d 781, 791 (Tex.App.—Houston [14th Dist.] 1990, no writ); *Winograd v. Willis*, 789 S.W.2d 307, 312 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Acco Constructors, Inc. v. National Steel Products Co.*, 733 S.W.2d 368, 370 (Tex.App.—Houston [14th Dist.] 1987, no writ).

The supreme court granted writ of error in *Sage Street Associates* solely on two points of error challenging this court's decision on the prejudgment interest question. That case was orally argued and submitted to the supreme court on January 14, 1992. No decision has been rendered by the supreme court. It is anticipated that the supreme court will reverse this court's judgment in *Sage Street Associates;* however, until the supreme court has decided that case, we will adhere to this court's decisions in the four cases cited above.

When the non-breaching party's damages cannot be ascertained from the face of the contract, prejudgment interest accrues at the prevailing rate that exists on the date judgment is rendered, but in no event less than ten percent (10%). *Perry Roofing v. Olcott*, 744 S.W.2d 929, 930 (Tex.1988).

The agreement between White and IPS contains no measure by which a sum payable could be ascertained from the contract itself. In order to find the amount of the damages due White under the contract, the jury would have to determine the amount of IPS sales in the territory during the agreement period and the expenses White saved by not performing the last seven months of the contract. Neither sales nor expenses saved could be determined from the face of the contract. Therefore, article 5069–1.03 cannot provide the basis for awarding prejudgment interest to White. The trial court properly used the interest standard provided by article 5069–1.05. Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.