Robert HANNA, Don W. Bevel & Luther Hanna Sanitation, Inc., Appellants,

v.

Andrew LOTT & Stephen Lott & As Next Friend Mic–Talford Lott & Monique Lott, Appellees.

No. 12–93–00045–CV.

Court of Appeals of Texas, Tyler.

Oct. 31, 1994.

Gregory Neeley, Longview, for appellants.

Preston McGee and Michael E. Starr, Tyler, for appellees.

RAMEY, Chief Justice.

This appeal is from a judgment awarding damages resulting from a traffic accident. Appellants Robert Hanna ("Robert"), Don W. Bevel ("Bevel"), and Luther Hanna Sanitation, Inc. ("LHS"), (collectively, "Appellants"), were sued by Appellees Andrew Lott ("Andrew"), Stephen Lott, Mic–Talford Lott, and Monique Lott (collectively, "Lott") after a garbage truck owned by LHS collided with a vehicle driven by Andrew, in which the minor plaintiffs, Mic–Talford and Monique Lott, were passengers. After trial, the court entered judgment based on the jury's findings that each individual defendant was grossly negligent, awarding $30,706.00 in compensatory damages and $22,500.00 in exemplary damages, plus costs and interest. We will affirm the judgment with respect to Stephen, Mic–Talford and Monique Lott, and reverse and remand the judgment as to Andrew Lott.

The collision occurred on the morning of July 11, 1991 when a garbage truck driver failed to maintain a proper look-out while making a left turn. It resulted in the total loss of Andrew Lott's car and injuries to the minors; the garbage truck and its occupants were apparently not significantly damaged. Though Bevel initially identified himself as the driver of the vehicle, there was also evidence that Robert, who was related to the owners of LHS as well as Bevel, was driving at the time of the incident. When the accident occurred, Robert's driver's license was suspended because of a Driving While Intoxicated conviction. Appellants do not contest the finding that the ordinary negligence of the driver of the garbage truck was a proximate cause of the occurrence. Rather, their eight points of error question the admissibility of the testimony of a witness, the propriety of the negligent entrustment finding against LHS, the findings of gross negligence, and certain aspects of the damages awarded.

In their first point of error, Appellants assert that the trial court erred in allowing Lott to call Reba Hanna ("Reba") as a witness. Reba was president and treasurer of LHS, as well as its corporate representative at trial, but she had not been identified

in Lott's interrogatory answers as a person with knowledge of relevant facts. TEX. R.CIV.P. 215(5) provides that

> A party who fails to respond to ... a request for discovery shall not be entitled to present evidence which the party was under a duty to provide ... or to offer the testimony of ... any ... person having sufficient knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists.

The application of this rule has been much disputed. In summary, it can be said that

> Rule 215(5) mandates that a party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present that evidence unless the trial court finds that good cause sufficient to require admission exists. TEX. R.CIV.P. 215(5) (Vernon Supp.1992). The sanction is automatic unless good cause is shown. *Stiles v. Royal Ins. Co. of America*, 798 S.W.2d 591, 594 (Tex.App.—Dallas 1990, writ denied). The Texas Supreme Court has consistently held that "good cause" for purposes of Rule 215(5) is designed to prevent trial by ambush, and not to create a trap for the unwary. *Smith v. Southwest Feed Yards*, 835 S.W.2d 89, 91 (Tex.1992). Good cause allowing testimony of a party witness may exist when the witness' identity is certain and when his or her personal knowledge of relevant facts has been communicated to all other parties. *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 162 (Tex.1992).

*Stern v. State ex rel. Ansel*, 869 S.W.2d 614, 627–28 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

The Texas courts of appeal have not been in agreement on the admissibility of the testimony of an individual called as an adverse party when not identified by the calling party as one having knowledge of relevant facts. The Fort Worth and El Paso courts have held that in the absence of a finding of good cause as required by Rule 215(5), it was error for the trial court to admit the testimony of the unidentified party called by his adversary. *Varner v. Howe*, 860 S.W.2d 458, 465 (Tex.App.—El Paso 1993, no writ); *Brekalo v. Ballard*, 836 S.W.2d 783, 785 (Tex. App.—Fort Worth 1992, no writ). The Texarkana and Houston First courts have reached the opposite result, emphasizing the adverse party relationship, as did the trial court in the appeal before us. *E–Z Mart Stores, Inc. v. Terry*, 794 S.W.2d 63, 65 (Tex. App.—Texarkana 1990, writ denied); *Weng Enterprises v. Embassy World Travel*, 837 S.W.2d 217, 221 (Tex.App.—Houston [1st Dist.] 1992, no writ); *National Union Fire Ins. Co. v. Wyar*, 821 S.W.2d 291, 293 (Tex. App.—Houston [1st Dist.] 1991, no writ).

Our supreme court has carved out an exception to the automatic exclusion rule in the closely related circumstance in which a party, not having identified himself as one having knowledge of pertinent facts, undertakes to call himself to testify. *Smith v. Southwest Feed Yards*, 835 S.W.2d 89, 90 (Tex.1992); *Rogers v. Stell*, 835 S.W.2d 100, 101 (Tex. 1992); *Henry S. Miller Company v. Bynum*, 836 S.W.2d 160, 162 (Tex.1992).

■ Reba was shown to be the person in charge of the operations of LHS, and she therefore qualified as a party for the purposes of Rule 215. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). The supreme court has taught in the exception cases that the factors to be weighed in determining good cause were whether the party called had been deposed and whether her knowledge of relevant facts had been communicated through her responses to discovery; these factors were satisfied here.[1] It is not essential that the trial court have conducted a specific hearing on the existence of good cause for the failure to designate the party as a person with the requisite knowledge. *Smith*, 835 S.W.2d at 90–92. Under the posture of this case, the Appellants, who objected to Reba's being called to testify as an adverse party, were patently cognizant that she had knowledge of relevant facts. We are persuaded that this appeal's similarity to the supreme court's exception cases as well as the satisfaction of the prescribed factors to be considered re-

---

1. Even the appellate court in *Varner* acknowledged that the trial court "probably should have" found good cause in facts similar to this appeal. *Varner*, 860 S.W.2d at 465.

quires us to conclude that the trial court did not abuse its discretion in permitting Reba to testify. Appellants' first point of error is overruled.

In their second point of error Appellants maintain that there was no evidence of negligent entrustment of its truck by LHS to the vehicle's driver. When a "no evidence" point is raised by a party that does not have the burden of proof on the issue,

> we must examine the record in the light most favorable to the finding to determine if there is any probative evidence, or reasonable inferences therefrom, which supports the finding, and we must disregard all evidence or reasonable inferences therefrom to the contrary. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 276 (Tex.App.—Amarillo 1988, writ denied). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951).

*Matter of Marriage of DeVine,* 869 S.W.2d 415, 420 (Tex.App.—Amarillo 1993, no writ).

▇▇▇ The elements of negligent entrustment of a vehicle are:

1) entrustment of a vehicle by the owner;

2) to an unlicensed, incompetent, or reckless driver;

3) that the owner knew or should have known to be unlicensed, incompetent, or reckless;

4) that the driver was negligent on the occasion in question; and

5) that the driver's negligence proximately caused the accident.

*Williams v. Steves Industries, Inc.,* 699 S.W.2d 570, 571 (Tex.1985). Appellants concede in their brief that there was evidence of all but the first and second elements of negligent entrustment. They dispute, however, that any evidence supported a finding that the vehicle was entrusted to Robert by LHS. Reba repeatedly denied ever having given Robert permission to drive, insisting that Robert was employed by LHS as a helper, not a driver. Reba also testified that she saw Bevel driving the garbage truck when it exited LHS' place of business on the morning of the accident.

"It is a general rule that an agent's authority is presumed to be coextensive with the business entrusted to him." *Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d 826, 837 (Tex.App.—Amarillo 1993, writ denied). The only evidence was that Bevel was the assigned truck driver for LHS. In keeping with the evidence that Robert was the driver at the time of the collision, the jury's finding of LHS's negligent entrustment can be supported by the rational inference that, at some time after the truck left the yard, Bevel, while acting in the course and scope of his employment, permitted Robert to drive it. Bevel, Reba, and Robert were all related, and LHS was a small, informal, family owned-and-operated business. The garbage truck operated with a two-man "crew", and if, as Robert testified, the driver sometimes worked as a helper, the jury could have rationally concluded that the driver at least had the authority to allow the helper to drive, and, on this occasion, had done so.

Furthermore, the jury might simply have not believed Reba's testimony that Bevel was driving when the truck left the yard, just as it obviously did not believe the testimony of Robert and Bevel that Bevel was driving at the time of the accident. This accident occurred only a few miles from the yard, shortly after Robert and Bevel left for the morning run. At the time of the accident they admitted having made only one previous stop. The jury could have inferred that the individual they determined to have been driving during the accident—Robert—was also the driver when he and Bevel exited the yard just minutes prior to the accident.

Given these rational and permissible inferences which the jury might have made from the evidence before it, we cannot conclude that there was no more than a scintilla of evidence of LHS's negligent entrustment. The Appellants' second point of error is overruled.

▇▇▇ In their related third point of error, Appellants claim that there was no evidence of gross negligence on the part of LHS in entrusting the vehicle to Robert, and that the trial court erred in so charging the jury, in

overruling their motion for judgment JNOV, and in overruling their motion to disregard the relevant jury findings. A finding of gross negligence can be upheld on appeal only "if there is some evidence that (a) the defendant's conduct created an extreme risk of harm, and (b) the defendant was aware of the existence of the extreme risk." *Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex.1993). The *Wal–Mart* opinion stresses a number of factors which differentiate gross negligence from simple negligence:

> Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it.
>
> ... The "entire want of care" test focuses on the objective nature of defendant's conduct.... The "conscious indifference" test focuses on the defendants' mental state.... Under this approach, the actor, although not actually intending to cause harm, must have proceeded with knowledge that harm was a "highly probable" consequence.... Because of this requirement of conscious indifference, gross negligence can never be the result of "momentary thoughtlessness, inadvertence, or error of judgment."

*Wal–Mart Stores, Inc.*, at 325–26. In negligent entrustment cases, punitive damages may be awarded against the vehicle's owner if the driver was unfit and the owner grossly negligent in entrusting the vehicle to him. *Williams v. Steves Industries, Inc.*, 699 S.W.2d at 572.

The evidence here was that Robert had a history of driving without a license. At the time of this incident his license was suspended because of a previous DWI conviction. Monique Lott testified that she saw the driver of the truck, immediately after the accident, carry "a brown paper bag that looked like there was some sort of bottle in it" around to the back, then return with a trash can and dump it in the truck.

Appellants argue that a finding of gross negligence here is inconsistent with the supreme court's decision in *Williams v. Steves*

*Industries, Inc.,* 699 S.W.2d 570 (Tex.1985). There the Court held that the mere fact that an employer entrusted a vehicle to an unlicensed driver did not in itself raise an issue of gross negligence, noting that "whether a driver has a license does not determine whether a driver is *in fact* incompetent." (emphasis added) *Ibid.* at 574. But the Court also identified certain factors which, if present, might support a finding of gross negligence:

> Like the distinction between negligence and gross negligence, no exact line of distinction can be drawn between negligent entrustment and grossly negligent entrustment. However, other cases can provide guidance. The Texas cases that have imposed punitive damages for negligent entrustment have required more than a finding that the driver was unlicensed. Those cases have required evidence that the driver was in fact incompetent or habitually reckless, and the owner knew or should have known that the driver was incompetent or reckless.

*Ibid.* at 573.

In the present case, more was involved than simply driving without a valid license. Hanna had had his license revoked for a previous DWI offense. There was evidence from which the jury could have inferred that Robert had been drinking on the morning in question. Furthermore, there was evidence that LHS knew that Robert had driven trucks in his family business without the required license and that his driver's license had been suspended for a second conviction of Driving While Intoxicated. The jury could have inferred that LHS was consciously indifferent to the safety of others on the highway in not specifically instructing and forbidding Bevel from permitting Robert to operate the truck. The jury was the fact finder and sole judge of the credibility of the witnesses and we hold that these additional facts prevent us from holding that there was no evidence to support the finding of gross negligence on the part of LHS. Appellants' third point of error is overruled.

■ In their fourth point of error, Appellants assert that the jury verdict is inconsis-

tent, insofar as all three defendants were found both negligent and grossly negligent. According to Appellants, it was expected that the form of the submission would effectively determine whether the jury found Robert or Bevel to have been driving by asking whether each was negligent. The jury found that both were negligent, and went on to find both grossly negligent.

A court may not strike down jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled. [citation omitted] The court must "reconcile apparent conflicts in the jury's findings" if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole.

*International Piping v. M.M. White*, 831 S.W.2d 444, 451–52 (Tex.App.—Houston [14th Dist.] 1992, writ denied). The parties' assumption that the jury would have found one or the other of the individuals negligent on the basis of who was actually driving need not restrict the jury to such assumption. As noted above, it is not inconsistent with the evidence that the jury found that Bevel was driving when the truck left for the day, that under the circumstances Bevel was grossly negligent in permitting Hanna to drive this vehicle, and that Hanna was grossly negligent in the manner and the condition in which he was driving. The Appellants' fourth point of error is overruled.

■ In their fifth point of error, Appellants make an argument similar to that raised in their fourth point, that the evidence respecting the behavior of the driver of the vehicle warrants no more than a finding of simple negligence. We do not disagree with Appellants' contention that the commission of a traffic violation, alone, does not constitute gross negligence. Such conclusion is compelled by the subjective component of the test for gross negligence; it is also supported by the cases cited by Appellant. *See Brown v. Powell*, 508 S.W.2d 691, 692 (Tex.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). But the record here, read in the light most favorable to Lott, contains more than the simple commission of a traffic offense. To repeat, the record allowed the jury to infer

that a large truck was entrusted to a driver who had had his license suspended for drinking while driving, and who may have been drinking on the morning in question. These facts support the finding of gross negligence. Appellants' fifth point of error is overruled.

■ In their sixth point of error, Appellants claim that the trial court erred insofar as the damages awarded were improper; the evidence, they assert, established, as a matter of law, that Andrew Lott failed to mitigate his damages by failing to accept a proposed settlement of his claim against his insurance carrier, and that such acceptance would have reduced the damage verdict that was awarded.

■ But a plaintiff need not take all possible actions which might possibly reduce the amount of his damages in an imminent lawsuit.

The burden of proving a failure to mitigate is upon the party who caused the loss and the standard is that of ordinary care, *i.e.,* what an ordinary prudent person would have done under the same or similar circumstances.

*Sorbus, Inc. v. UHW Corp.*, 855 S.W.2d 771, 775 (Tex.App.—El Paso 1993, writ denied). The evidence shows that Andrew Lott's insurance company offered him a settlement of $2,146.50 as the full cash value of his automobile. The jury found that the value of the vehicle at the time of the accident was $3,500.00. Given this jury finding that the vehicle was worth an amount more than fifty per cent more than the amount offered in settlement, we cannot say, as a matter of law, that an ordinary prudent person in these circumstances would necessarily have accepted the offer. The Appellants' sixth point of error is overruled.

■ In their seventh point of error, Appellants complain that the jury was improperly allowed to assess damages in favor of Andrew Lott for "loss of earning capacity", when such loss was the result of the destruction of his automobile and not his personal injuries that he sustained as a result of the accident. In the third question propounded to the jury, the court asked what sum of money would fairly compensate Andrew for

his "injuries." In this connection, the jury was instructed to consider, as elements of his damage, "physical pain and mental anguish," and "loss of earning capacity." The jury found Andrew's damages to be $25,000 in answer to the third question.

There was some evidence of physical pain and mental anguish suffered by Andrew Lott from the collision, but his loss of earnings from any personal injury was limited to one full day and two half days of work. There was no other evidence of any personal injury—that is, physical, bodily injury—suffered by Andrew in the accident which impaired his ability to earn a living for an extended period of time. Andrew testified, however, that he did sustain a loss earnings of $13,800 (7½ months at $1,840 per month), reduced earnings at a subsequent job of $5,265 (39 weeks at $135 per month) and loss of future earning capacity of $5,200, totalling $24,265. It is undisputed that these elements of damage arose from Andrew's absence from work and the consequent loss of his job followed by a new job at a lesser pay rate, which was caused by his loss of transportation due to the destruction of his car.

■ It is our understanding of Texas law that if a chattel has been *totally destroyed* as a result of a tort, *no additional recovery* is allowed for the unavailability or loss of use of the property while it is being replaced. *American Jet, Inc. v. Leyendecker,* 683 S.W.2d 121, 128 (Tex.App.—San Antonio 1984, no writ); *Carson v. Bryan,* 532 S.W.2d 711, 713 (Tex.Civ.App.—Amarillo 1976, no writ); *Cogbill v. Martin,* 308 S.W.2d 269, 271 (Tex.Civ.App.—Waco 1957, no writ); *City of Canadian v. Guthrie,* 87 S.W.2d 316, 318 (Tex.Civ.App.—Amarillo 1932, no writ).[2] *See Pasadena State Bank v. Isaac,* 149 Tex. 47, 228 S.W.2d 127. On the other hand, this line of cases holds that damages for loss of use of

the vehicle could be recovered if the damage to the vehicle was repairable. *Ibid.*

■ The rule prohibiting recovery for loss of use when the chattel is a total loss applies to its owner's claims for diminution of the claimant's earnings and future earning capacity, as in this case. *City of Canadian,* 87 S.W.2d at 318; *Cogbill,* 308 S.W.2d at 271.[3] Furthermore, it matters not that the totally destroyed chattel had not been replaced because the owner had been unable to provide the financing for a substitute vehicle. *Carson,* 532 S.W.2d at 713; *Kansas City Southern,* 276 S.W.2d at 333, 334.

Andrew has cited one case in support of his contention that loss of earning capacity is recoverable in a tort action though the claimant sustained no personal injuries. *Western Guaranty Loan Co. v. Dean,* 309 S.W.2d 857 (Tex.Civ.App.—Dallas 1957, writ ref'd n.r.e.). In *Western Guaranty,* the plaintiff recovered damages for lost compensation because of unreasonable collection efforts; there was no destruction of a chattel. The principle of law applicable to the instant appeal is premised upon the total loss of a chattel, and *Western Guaranty* is therefore inapposite to Appellants' point of error.

It was error to charge the jury to award damages for Andrew's "loss of earning capacity" resulting from the unavailability of his wrecked vehicle. Because this element of damage was not set out in a separate jury question, but was part of a broad issue including also the inquiry about the amount of Andrew's damages for mental anguish and physical pain, we are unable to order a remittitur in the amount of the "loss of earning capacity" damages. *See Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 663 (Tex. App.—El Paso 1989, writ denied). And because these damages are unliquidated and the liability issues are contested, we have no alternative but to remand the case for a new

**2.** Also, *Wright v. Gernandt,* 559 S.W.2d 864, 869 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Riddell v. Mays,* 533 S.W.2d 910, 911 (Tex.Civ. App.—Waco 1976, writ ref'd n.r.e.); *Export Insurance Company v. Herrera,* 426 S.W.2d 895, 901 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n.r.e.); *Kansas City Southern Ry. Co. v. Frederick,* 276 S.W.2d 332, 334–335 (Tex.Civ. App.—Beaumont 1955, writ ref'd n.r.e.).

**3.** A 1950 supreme court case held that the prohibition against damages for loss of use of the chattel may, at least in part, be offset by the recovery of interest on the diminution of the personalty's value from the date of the occurrence to the time of trial. *King v. McGuff,* 149 Tex. 432, 234 S.W.2d 403, 406–407 (1950).

trial with respect to Andrew Lott. TEX. R.APP.P. 81(b)(1); *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex.1982). Appellants' seventh point of error is sustained.

In their eighth point of error, the Appellants claim that the judgment was erroneous insofar as it did not conform to Chapter 142 of the Texas Property Code. Lott correctly asserts that this Chapter is permissive rather than mandatory, and the trial court did not err in failing to provide for the investment of the relatively modest sums awarded to the minor Appellees. The Appellants' eighth point of error is overruled.

The judgment of the trial court is affirmed with respect to Steven Lott, Individually and as next friend for Mic–Talford Lott and Monique Lott. It is reversed with respect to the judgment entered in favor of Andrew Lott, and such cause of action is remanded to the trial court for a new trial.