SORBUS, INC., now d/b/a Bell Atlantic Business Systems Services, Inc., Appellant,

v.

UHW CORPORATION, Appellee.

No. 08–92–00144–CV.

Court of Appeals of Texas, El Paso.

April 21, 1993.

Rehearing Overruled May 26, 1993.

Sarah R. Saldana, Baker & Botts, Dallas, for appellant.

Michael R. Johnson, Johnson, Unell & Wolfforth, Dallas, for appellee.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a judgment which awarded the Appellee actual and exemplary damages, based upon jury findings, for tortious interference with a contract. We reverse and remand in part and reverse and render in part.

### Facts

The Appellant, Sorbus, Inc., and the Appellee, UHW Corporation, are both in the third-party computer maintenance business in which they contract to provide maintenance to businesses which operate computers. Sorbus had a maintenance contract to provide services to Teknica, Inc. Representatives of UHW contacted Teknica and submitted a bid to obtain their business. The proposal represented a substantial saving over the amount Teknica was paying Sorbus for maintenance services. A supervisor recommended to the company executive vice president, Richard Smith, that Teknica accept UHW's proposal.

Richard Smith met with representatives of Sorbus and informed their salesman of the UHW proposal and sought a counterproposal from Sorbus. When no response was received, a letter was sent to Sorbus canceling its maintenance contract in accordance with a 90–day notice provision in the contract. On the same day, a call was made to advise UHW that its offer had been accepted.

The following day a maintenance agreement between Teknica and UHW was signed. That same day Sorbus received the cancellation letter. Teknica scheduled a meeting with Sorbus the following day. At that time, Sorbus did present a new proposal which would reduce the cost Tek-

nica had been paying for maintenance services. Smith advised the Sorbus salesmen that a contract had already been signed with UHW. There is a difference in the testimony as to whether that information resulted in the meeting being terminated or whether some negotiations continued.

There was some discussion of a "three-day rule" which the parties thought might permit Teknica to legally cancel its contract within three days of signing.[1] Shortly after that discussion, Teknica phoned UHW to advise that it was canceling the contract which had just been signed the day before and a letter was sent to confirm that notice to UHW. Smith later told a UHW representative that Teknica would honor its contract if the "three-day rule" did not give it the right to cancel. UHW rejected the attempt to revoke the cancellation. Its president testified it would not be possible to perform the required services in a manner satisfactory to Teknica after their confidential relationship had been breached by the attempted cancellation.

### Trial Results

UHW filed this suit against Teknica for breach of contract and against Sorbus for tortious interference with a contractual relationship. By the time of trial, Teknica was out of business and did not appear. The trial court directed a verdict for UHW on its claims against Teknica. The jury found (1) that Sorbus did tortiously interfere with the contract between UHW and Teknica, (2) actual damages of $40,017.25, (3) that the interference was malicious, (4) exemplary damages of $52,000 and (5) failed to find that the interference was legally justified. Judgment was entered against each defendant for the amounts found by the jury, plus prejudgment interest and cost.

### Evidence of Tortious Interference

■ Sorbus asserts in its first three points of error that there is no evidence and insufficient evidence to establish its

---

1. The parties apparently had in mind Tex.Rev. Civ.Stat.Ann. art. 5069–13.02(a) (Vernon 1987) which permits individual consumers to cancel home solicitation transactions before midnight of the third business day after the consumer signs a contract.

liability for tortious interference of the maintenance contract entered into between UHW and Teknica. Procedurally, Sorbus could obtain a rendition on its no evidence points or a remand on its insufficient evidence point. We pass upon the no evidence point under the standard set forth in *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965) and we consider only the evidence and inferences which tend to support the jury's findings and we disregard all evidence and inferences to the contrary. In passing upon the insufficient evidence point, we consider all the evidence to determine if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951). Where there is conflicting evidence, the jury's verdict is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508 (Tex.1947); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131 (Tex. App.—El Paso 1992, writ denied).

Although the Sorbus sales representatives did not know that Teknica had signed a contract with UHW when they met with Richard Smith on March 14, 1990, Mr. Smith testified that after he informed them that a contract had already been signed with their competitor, it was suggested that there might be a way to cancel under the "three-day rule". Although the evidence was in conflict, there was testimony that the meeting lasted perhaps a half hour after the salesmen were told of the contract with UHW. Even if Sorbus did not suggest or believe the three-day rule might apply, its salesmen did proceed to send a new written contract to Teknica after the meeting had concluded. The only purpose for the new proposal was to see if Teknica might cancel its contract with UHW and accept Sorbus's latest proposal. If Sorbus did not anticipate that its latest offer might be accepted, there was no need to send it to the customer. Although the evidence is conflicting on how all of these events occurred, it is legally and factually sufficient to establish that the Sorbus salesmen, Eckmann and Lanier, interfered with the contract between Teknica and UHW and that their conduct resulted in the cancellation of

that contract. Points of Error Nos. One, Two and Three are overruled.

### Evidence of Liquidation

■ Sorbus contends the trial court erred in refusing to allow it to introduce evidence of Teknica's inability to perform its contract with UHW. Sorbus, by way of a bill of exception, offered proof that in May or June of 1990, Teknica went into liquidation and the contract period for the agreement with UHW was June 15, 1990 to June 14, 1991. Thus, the argument is made that even if there was no tortious interference with the contract and it had not been canceled, it could not have been performed and UHW would never have received any profit on a contract with a liquidated company.

We are not cited to and we have not found any authority directly in point. Appellant relies upon language in *Maxvill–Glasco Drilling Company, Inc. v. Royal Oil and Gas Corporation*, 800 S.W.2d 384, 386 (Tex.App.—Corpus Christi 1990, writ denied) that "[t]he court attempts to put the plaintiff in the same economic position that he would have been in had there been no breach or interference with the contract." It concludes that the contract would never have been performed and UHW's economic position would have been no payment from Teknica and thus there could be no loss of profits. UHW's position is that its damages are determined as of the date of breach and at that time it could reasonably expect a profit from the contract with Teknica. Thus, it convinced the trial court to sustain a motion in limine and exclude evidence as to Teknica's inability to perform. In *Clements v. Withers*, 437 S.W.2d 818 (Tex.1969), the Court held that unenforceability of the contract is no defense to an action for tortious interference. In *Sterner v. Marathon Oil Company*, 767 S.W.2d 686 (Tex.1989), the Court held that the terminable-at-will status of a contract was no defense to an action for tortious interference with its performance. The Court in that opinion did recognize that legal justification or excuse is an affirmative defense with the burden of proof upon

the defendant who asserts that defense to the plaintiff's cause of action.

The following year, the Court held that covenants not to compete which are unreasonable restraints of trade and unenforceable on grounds of public policy cannot form the basis of an action for tortious interference. *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660 (Tex.1990). The Court followed that holding and reached the same results in *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830 (Tex.1991).

We conclude that the liquidation or insolvency of the party which canceled its contract does not make the contract unenforceable, but its inability to perform can be an affirmative defense which could, based upon jury findings, prevent recovery upon all or part of the claim for damages. It should be considered similar to the affirmative defense of payment. If a jury, in a claim on an account, finds that all or part of the amount due has been paid, recovery is reduced according to such finding. Conceivably, a contracting party which goes into bankruptcy to protect itself from writs issued to recover on a debt could emerge from bankruptcy and still pay in full its debt to one with whom it had contracted. Likewise, in this case, even after liquidation, funds may have been available to pay UHW for its lost profit after Teknica canceled its contract. But, the jury in this case never knew that the contract would not be performed and whether there could be any recovery of lost profits. In *Ullman, Lewis & Co. v. P.S. Babcock*, 63 Tex. 68 (1885), suit arose out of the breach of a contract to deliver fifteen barrels of whiskey in Laredo within a reasonable time after the contract was made. With regard to the issue in our case the Court said:

> We see no reason to doubt that a person who, by executory contract, has contracted to sell and deliver merchandise on a credit, may refuse to deliver in case of the insolvency of the purchaser, as rightfully as a seller may arrest merchandise in transit, when the contract has been so completed as to vest the title in the purchaser if he be insolvent.

*Id.* at 71. The Court in its opinion states that the jury was instructed that the appellants had the right to refuse to deliver if the appellee was insolvent and the court instructed as to what would constitute insolvency. In our case, there was no evidence admitted as to insolvency and no issue went to the jury on that issue as in the *Babcock* case. We conclude that the trial court erred in refusing the offer of evidence that at the time the contract was to be performed and monthly payments to be made by Teknica to UHW, Teknica was in a state of liquidation. We sustain Point of Error No. Four.

### Damages Instructions

Sorbus also complains about the trial court's failure to instruct the jury that UHW would have had an opportunity to realize profits under the contract but for any act of interference by Sorbus and it also complains about the failure to instruct on actual damages. Having sustained Point of Error No. Four, the questions on a proper instruction are moot. Not knowing what the evidence might be upon retrial, we should not write on what could become the law of the case with regard to a proper jury instruction. Points of Error Nos. Five, Six and Thirteen are overruled as moot.

### Mitigation

We likewise conclude that the issue raised as to mitigation is moot in view of a new trial on the issue of actual damages. Mitigation was not established as a matter of law, and if properly raised by the evidence, should be a fact question for the jury. The burden of proving a failure to mitigate is upon the party who caused the loss and the standard is that of ordinary care, i.e., what an ordinary prudent person would have done under the same or similar circumstances. *Pinson v. Red Arrow Freight Lines, Inc.*, 801 S.W.2d 14 (Tex. App.—Austin 1990, no writ); *Moulton v. Alamo Ambulance Service, Inc.*, 414 S.W.2d 444 (Tex.1967). Points of Error Nos. Seven, Eight and Nine are overruled as moot.

## Punitive Damages

Next, the Appellant urges that the trial court erred in entering judgment awarding punitive damages. It argues there is no evidence which authorized the submission of Questions 3 and 4 and that its motion to disregard the jury's answers should have been granted. Without dispute, Sorbus did meet with representatives of Teknica in an effort to renew its maintenance contract. But, that meeting was at the request of Teknica. Sorbus did in fact submit a written proposal to Teknica after the meeting and learning that a contract had been signed with UHW. But, again that was in response to the request by Teknica. Perhaps most important of all is that Teknica was in fact a customer of Sorbus until UHW came on the scene and began to seek the business with a lower bid. All of the efforts of Sorbus were to try to retain a regular customer. Certainly, they were not required to walk away from a regular customer when a competitor came on the scene with a lower bid. Otherwise, competition and free enterprise would mean nothing.

In *Clements v. Withers*, 437 S.W.2d 818 (Tex.1969), Justice Reavley pointed out that "to support the recovery of punitive damages" for the tort of interference with an existing contractual relationship "there must be a finding of actual malice: ill-will, spite, evil motive, or purposing the injuring of another." 437 S.W.2d at 822. Following that decision, this Court in *Top Value Enterprises, Inc. v. Carlson Marketing Group, Inc.*, 703 S.W.2d 806 (Tex.App.—El Paso 1986, writ ref'd n.r.e.) sustained a no evidence point made as to a jury finding of malice and said:

> In the present case, we have found that we have no more than an intent on the part of the Appellant to obtain its own contracts knowing of the existence and the terms of Gold Bond's contracts and knowing to obtain its own contracts the Appellant would cause a breach of the Gold Bond contracts.

703 S.W.2d at 814. In this case, Sorbus sought to retain the customer, knowing that acceptance of its new proposal would result in the cancellation of the contract with UHW. That conduct may justify an award of actual damages, it does not support an award of exemplary damages. We sustain the "no evidence" contentions made in Points of Error Nos. Ten, Eleven and Twelve.

## Legal Justification

Finally, Sorbus argues that it is entitled to judgment in its favor because its actions were legally justified as a matter of law. We conclude otherwise. Prior to these negotiations with both UHW and Sorbus, Teknica had sent notification to Sorbus that its existing contract was canceled. Therefore, Sorbus no longer had any superior right in the subject matter. As noted in the Sterner opinion, under the defense of legal justification one is privileged to interfere with another's contract (1) if it is done in a bona fide exercise of its own rights, or (2) if he has an equal or superior right in the subject matter to that of the other party. In this case, the jury found against Sorbus in answer to Question No. 5. We conclude there is a fact issue, but the defense was not established as a matter of law. Points of Error Nos. Fourteen and Fifteen are overruled.

## Separate Trials

Upon retrial, only Sorbus will be a defendant and the issues raised in Points of Error Nos. Sixteen and Seventeen about error in failing to have a separate trial without Teknica as a party will be moot. The judgment against Teknica was not appealed and has become final.

## Conclusion

The judgment of the trial court is reversed and the case is remanded as to the issue of tortious interference with a contract and the actual damages, if any, arising from such tort, and the issue as to malicious interference and exemplary damages is reversed and judgment rendered denying recovery for such damages.