**HAYNES & BOONE, Petitioner,**

v.

**BOWSER BOULDIN, LTD. et al., Respondents.**

No. D–4448.

Supreme Court of Texas.

Argued Dec. 13, 1994.

Decided March 30, 1995.

George H. Spencer, San Antonio, Michael A. Hatchell, Molly H. Anderson, Tyler, for petitioner.

Bernard William Fischman, Franklin D. Houser, San Antonio, Lawrence Fischman, Dallas, for respondents.

ENOCH, Justice, delivered the opinion of the Court, in which all Justices join.

Bowser Bouldin, Ltd. (Bouldin) recovered judgment for malpractice and violation of the Deceptive Trades Practices—Consumer Protection Act (DTPA), TEX.BUS. & COM.CODE §§ 17.41–.63, against its law firm Haynes & Boone for the firm's handling of Bouldin's suit with Blockbuster, Inc. Bouldin elected DTPA damages. The trial court awarded Bouldin damages for the loss of investment in a shopping center in which Blockbuster was a tenant, the deficiency balance Bouldin was obligated to pay when the center was foreclosed upon by its creditor, the cost of settlement of the Blockbuster litigation, lost rents from Blockbuster, and money paid to Haynes & Boone to conduct the Blockbuster litigation. Haynes & Boone objected to the submission of the loss of investment and deficiency damages to the jury. On appeal, the court of appeals suggested remittitur as to the lost rents and the amounts paid to settle the Blockbuster suit, which Bouldin satisfied, and then affirmed.[1] 864 S.W.2d 662. We reverse the judgment of the court of appeals and remand the case to the court of appeals for reconsideration of the punitive damages.

## I.

Bouldin is a strip shopping center developer. It completed the Highland View shopping center in Dallas in 1987 with Blockbuster as the "anchor" tenant.

To build the center, Bouldin obtained a construction loan. The construction loan had a short maturity that required Bouldin to either refinance or sell the property shortly after completion of construction. Bouldin's theory of damage is premised on the generally accepted business consideration by developers that a certain type of tenant, or "anchor tenant," is required to make a shopping

---

1. Because Bouldin has not contested the elimination of the lost rents and costs of settlement any error regarding these points is waived.

center successful. These tenants are required because they are helpful in attracting financial backing to the project due to their own financial and commercial stability, and because their established record of attracting commercial traffic will attract other tenants. Blockbuster, Inc. is considered an "anchor" tenant, and Bouldin pre-leased space to Blockbuster in the shopping center.

After completion of the shopping center and three months into the lease, Blockbuster became dissatisfied with the location. Bouldin had leased the space above Blockbuster to Sparx, a nightclub, and early on, water leaked into Blockbuster causing a loss of $25,000 in videotapes. Additionally, customers of Sparx began causing parking congestion and various other problems for Blockbuster.

Although Blockbuster was successful in obtaining a temporary restraining order enjoining the use of valet parking by Sparx and reserving parking spaces for Blockbuster, it also initiated a suit against Bouldin seeking rescission of its lease. In support of its suit Blockbuster claimed that Bouldin breached the lease, breached the covenant of quiet enjoyment, and made fraudulent representations. At this point, Bouldin retained Richard Capshaw of Haynes & Boone to defend it. An early settlement attempt was unsuccessful.

Haynes & Boone does not contest that its associate Richard Capshaw mishandled the Blockbuster litigation. During the litigation, Capshaw failed to timely respond to certain discovery requests from Blockbuster. As a result the trial court sanctioned Bouldin by striking all of its pleadings. Capshaw, although bringing a successful motion to reconsider, thereafter failed to follow through with the trial court's reconsidered sanctions order that required Bouldin to pay $1,500 in attorney's fees to Blockbuster by July 19, 1988. Consequently, Bouldin's pleadings were

again struck and a default judgment was rendered in favor of Blockbuster. Bouldin settled with Blockbuster on terms which permitted Blockbuster to cancel its lease on ninety days notice. According to Bouldin, this was an unfavorable settlement resulting from the procedural posture of the case.[2]

During the period of litigation with Blockbuster, Bouldin received two offers to buy the shopping center. Bouldin also made efforts to obtain permanent financing for the shopping center in order to pay off the construction loans. In June of 1987, Bouldin was provided a $5.35 million earnest money contract for the sale of the shopping center. That deal fell through in January 1988.[3] In April 1988, Bouldin was offered a second earnest money contract for $4.4 million, but this was cancelled by the offeror in May 1988. The default judgment was entered in July 1988. Bouldin was unable to sell or to obtain refinancing and consequently, it defaulted on the construction note and lost the shopping center through foreclosure.

## II.

 While not contesting liability, Haynes & Boone argues that there is no evidence of a causal nexus between Capshaw's conduct and the damages awarded by the court of appeals and that the jury question submitted represents an improper measure of damages. In order to recover damages, a plaintiff must produce evidence from which the jury may reasonably infer that the damages sued for have resulted from the conduct of the defendant. *McKnight v. Hill & Hill Exterminators*, 689 S.W.2d 206, 209 (Tex.1985). This causal nexus requirement is met when a jury is presented with pleading and proof that establish a direct causal link between the damages awarded, the actions of the defendant and the injury suffered. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731–32 n. 2 (Tex.1984). Here the jury answered three separate questions in the affir-

2. Blockbuster's original lease states: "28.18 At any time following the second anniversary of the Commencement Date of this Lease, Tenant shall be entitled to terminate this Lease upon written notice to Landlord, accompanied by a cash payment in an amount equal to the preceding twelve (12) month's minimum rental." This right of

termination accrued before the trial court's final sanctions order.

3. Trouble with the "anchor" tenant and a lien against the shopping center by one of Bouldin's creditors were given as reasons by the prospective buyer for not closing the sale.

mative finding that Haynes & Boone's actions were unconscionable, false, misleading, deceptive and a breach of its warranty. The jury determined that these actions were a "producing cause of damages to Bowser Bouldin." The jury then went on to answer a question with five subparts that requested the jurors to place values on the various elements of damages requested by Bouldin.

■■■ Bouldin, over the objection of Haynes & Boone, framed the loss of investment and deficiency damage issues in terms of damages resulting from the foreclosure. In order to recover these damages Bouldin must establish that the actions of Haynes & Boone were a producing cause of the foreclosure. *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex.1987). Producing cause is an "efficient, exciting, or contributing cause, which in the natural sequence, produced injuries or damages complained of, if any." *Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex.1976). "There can be more than one producing cause." *Id.* Therefore, we must determine if there is any evidence of producing cause of the foreclosure. In reviewing a no evidence question we consider only that evidence and reasonable inferences that tend to support the jury's findings, disregarding all contrary evidence and inferences. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990).

■■ Any claim for loss due to the foreclosure would be a claim for consequential damages. Consequential damages are "those damages which result naturally, but not necessarily from the acts complained of." *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex.1992). Here, Bouldin argues that the foreclosure naturally resulted from the loss of the Blockbuster suit. The evidence does not support this proposition. There is no evidence in the record that the bank foreclosed on the shopping center because of Haynes & Boone's unsuccessful defense of the Blockbuster suit.

To the contrary, Bouldin testified that it had negotiated a voluntary foreclosure because it knew it could no longer make the interest payments on the debt. On this point, the evidence was undisputed that the center's occupancy rate steadily declined from an opening rate of 60% to only 10% at the time Blockbuster left. Many of the remaining tenants did not pay rent. The bank began threatening foreclosure in November 1987 and in January 1988 formally initiated foreclosure proceedings. While Bouldin was able to negotiate extensions that required monthly interest payments, it immediately fell behind in the payments causing the bank to post the shopping center for foreclosure again. The only evidence that the center would have survived came from Rudy Belton, the principal of Bouldin, who testified that with Blockbuster as a tenant a sale or refinancing could be accomplished, and from Bouldin's real estate expert, who testified that banks rarely foreclose on commercial property when other options are available. This evidence is so weak as to do no more than create a mere surmise or suspicion of its existence and in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

Bouldin tries to tie the Blockbuster suit to the foreclosure with the argument that the loss of Blockbuster contributed to its inability to make the interest payments. But the loss of Blockbuster as a tenant is not the same thing as the *loss of the suit* with Blockbuster. It is undisputed that Blockbuster intended to quit Bouldin's premises before Capshaw was employed to defend Bouldin. It is undisputed that, at the time of the second sanctions order, Blockbuster had already satisfied the terms of its lease with Bouldin necessary to permit it, with the payment of one year's rent (as calculated under the lease), to vacate the premises. It is also undisputed that Blockbuster, prior to the sanctions order striking Bouldin's pleadings, had already signed a lease at another shopping center. While Bouldin argues that he lost valuable rights as against Blockbuster because he was forced into an unfavorable settlement with Blockbuster due to the second sanctions order, the only significance Bouldin attaches is that the lease terms changed to permit Blockbuster to vacate the premises with only ninety days notice. In short, rather than pay one year's rent, Blockbuster now needed only to pay one-fourth of

a year's rent as payment to vacate the premises.[4]

In any event, the court of appeals based its calculation of damages on loss of a $4.4 million sales contract. In this regard, no evidence exists to establish the causal nexus between the actions of Haynes & Boone and the loss of this sale. The contract was entered into after the first sanctions order, well into the dispute with Blockbuster, and it was rescinded before Bouldin ultimately lost the Blockbuster suit. Again, Bouldin's complaint is that it lost Blockbuster and then lost the center. Capshaw could not have prevented Bouldin from losing Blockbuster. The evidence regarding the lost sale also does no more than create a mere surmise or suspicion of its existence and in legal effect is no evidence. *Kindred*, 650 S.W.2d at 63.

Reviewing the evidence in the best possible light for Bouldin, there is no evidence that Blockbuster's vacating Bouldin's premises was the result of any act of Capshaw's. As a matter of law, Haynes & Boone was not a *producing* cause of the foreclosure. Because there is no evidence that Haynes & Boone caused the foreclosure, we render judgment in favor of Haynes & Boone with respect to the loss of investment and foreclosure deficiency. We reform the judgment of the court of appeals to award Bouldin $3,727 as the amounts paid to Haynes & Boone as fees and expenses for the Blockbuster litigation, and $100,000 in attorney's fees for the prosecution of this case.

### III.

In addition to actual damages, the jury found that Haynes & Boone acted knowingly and awarded $1.5 million in punitive damages. Because nearly all of the actual damages awarded have been reversed on appeal, we remand to the court of appeals for reconsideration of the punitive damage award in light of this opinion and *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). Consequently, we do not reach the issue of whether the court of appeals performed a proper factual sufficiency review regarding the award of punitive damages.

---

4. As part of its argument, Bouldin contends that *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex.1992), establishes that lost capital investments may be recovered in a DTPA action. While Bynum did recover his capital investment, that case is different. Bynum alleged that he was induced at the outset to enter into a lease because of false and deceptive representations. *Henry S. Miller Co. v. Bynum*, 797 S.W.2d 51 (Tex.App.—Houston [1st Dist] 1990). Bynum's allegations and proof at trial established that the misrepresentations induced the investment which was ultimately lost, thereby establishing a direct causal relation between the DTPA violation and the damages recovered. Here Bouldin's investment in the center was not induced but occurred well before Haynes & Boone was hired for the Blockbuster suit.