**GUNN INFINITI, INC., Appellant,**

v.

**Donald O'BYRNE, Appellee.**

**No. 04–97–00270–CV.**

Court of Appeals of Texas,
San Antonio.

Jan. 28, 1998.

Rehearing Overruled Feb. 25, 1998.

Jonathan Yedor, San Antonio, for Appellant.

Harry B. Adams, III, Adams & Flake, Universal City, for Appellee.

Before HARDBERGER, C.J., and LOPEZ and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

This is an appeal from a jury finding against appellant, Gunn Infiniti, on Texas Deceptive Trade–Practices Act (DTPA) and common law fraud claims. The basis of the suit was that Gunn sold appellee, David O'Byrne, a damaged and repaired car, but said that it was new and undamaged. When O'Byrne found out the truth, he sued. The jury awarded O'Byrne $21,500 in actual damages and $50,000 in exemplary damages, plus attorney's fees. We affirm the judgment.

### FACTS

In July 1993, O'Byrne, a resident of Shreveport, Louisiana, began looking for an Infiniti G–20. O'Byrne knew exactly what he wanted: a 1993 *black* Infiniti G–20 with tan interior. He could not find one in Louisiana, so he began searching in Texas. His search eventually led him to San Antonio's Gunn Infiniti, where representatives told him that they had the exact car he wanted. O'Byrne flew from Shreveport to San Antonio and purchased the car. He testified that he questioned Gunn's representatives on the phone and upon his arrival about any possible repairs or damage to the car and was assured that the car was in perfect condition. A Gunn representative told him that the car had a driver's side air bag; a sticker under the hood also stated this.

About a week after purchasing the car, O'Byrne was washing it when he noticed some paint splatters on the wheel. Further inspection gave him reason to believe that the hood had been taken off; the bolts had

been "tooled." O'Byrne also noticed a rough, dull look to the front air vents on the bumper that suggested that the car had been repainted. On a later date, O'Byrne also learned that the car did not have an air bag.

O'Byrne phoned Gunn Infiniti and demanded to know the truth. The saleswoman who had sold him the car initially denied that she knew of any repairs. However, she ultimately admitted that the hood had been replaced[1] and the door repaired. She explained that the door had been "dinged" on the lot. She also admitted that she had located the car in the repair shop. According to O'Byrne, the saleswoman told him that she had not informed him about the repairs because she believed they were minor. At trial, it was disclosed that the car had also been in for more extensive repairs at Gunn Oldsmobile. These repairs were performed on the car's fender, hood, roof, and deck lid. Both persons involved in the sale of the vehicle testified they had no knowledge of these repairs, although one employee admitted at trial that *someone* at Gunn Infiniti would have to have known about them.

A few days after O'Byrne's phone call to Gunn Infiniti, the manager at Gunn contacted O'Byrne and attempted to initiate negotiations to resolve the problem. Gunn first offered to find an identical car. This offer was accepted by O'Byrne, but Gunn could not find an identical car. Gunn then offered to get O'Byrne a 1993–and–one–half model. O'Byrne refused this offer. Gunn then offered to obtain a red G–20 for O'Byrne, but O'Byrne reminded Gunn that he had bargained for a black car. Gunn offered to paint it and add some money. O'Byrne refused. Negotiations finally came to a close on a disputed note. Gunn said it offered to refund the entire price of the car, O'Byrne's original airfare to San Antonio, and pay to have the car brought here from Shreveport. O'Byrne said that no one offered him airfare and that Gunn was going to deduct for the mileage on the car.

---

1. Ironically, it was the hood replacement that led to the misrepresentation regarding the airbag. Gunn Infiniti replaced a hood for a 1993 model, which had no air bag (and thus no sticker) with a 1993–and–one–half model, which had both.

O'Byrne testified that although he drove the car for a year or so while negotiations with Gunn Infiniti broke down and a lawsuit was initiated, he eventually became so distraught that he could hardly stand to look at it, let alone drive it. During the year immediately preceding trial, he testified that he only put 5,000 miles on the car. He testified that his friends gave him grief over having purchased such a lemon. The Infiniti dealership in Shreveport also got in their licks. There were a few other problems with the vehicle, such as a faulty electric window.

O'Byrne and two experts estimated that there was a $10,000–$10,500 disparity between what he paid for and what he got in his new car. In addition to these actual damages, O'Byrne requested additional or exemplary damages on the basis of Gunn's acting knowingly or on the outrageousness of the fraud. He requested and received damages for mental anguish. He also requested attorneys' fees. The jury agreed with him that Gunn had violated the DTPA and had committed common law fraud. It also awarded him additional damages under a hybrid question on that issue.

Gunn raises nine points of error: (1) that the trial court committed error by not instructing the jury on an affirmative defense of mitigation of damages or by not at least giving them an instruction on mitigation; (2) that the trial court committed error by combining exemplary damages and DTPA additional damages in one jury question; (3) that the jury's answer on economic loss is based on either legally insufficient or factually insufficient evidence because O'Byrne cannot recover for the absence of an air bag when that model didn't have an air bag; (4) that the jury's finding of mental anguish damages is not supported by legally or factually sufficient evidence; (5) that the jury's finding on common law fraud is not supported by legally or factually sufficient evidence; (6) that the jury's finding that Gunn Infiniti acted knowingly is not supported by legally or factually sufficient evidence; (7) that there was no legally sufficient evidence to support an instruction on exemplary damages; and (8) that there was no factually sufficient evidence to support a question on exemplary

damages, and the jury's finding was against the great weight and preponderance of the evidence. Finally, Gunn requests a modification of the award of attorneys' fees in the event this court reduces O'Byrne's damages.

## POINTS OF ERROR ONE AND TWO: CHARGE ERROR

### Standard of Review

A trial court has broad discretion in submitting issues and instructions to the jury. *Gunn Buick, Inc. v. Rosano,* 907 S.W.2d 628, 632 (Tex.App.—San Antonio 1995, no writ). The charge will be reviewed under an abuse of discretion standard. *Id.* Under this standard, if the ruling involves an issue of fact, a reviewing court may not reverse unless "the trial court could reasonably have reached only one decision." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). If the ruling is a question of law or a mixed question of law and fact, however, the trial judge's failure to analyze or apply the law correctly will constitute an abuse of discretion. *Id.* Of course, any charge error must be harmful in order to be reversed. *See* Tex.R.App. P. 44.1(a)(1) (no judgment will be reversed on basis of trial court's error of law, unless the error probably caused the rendition of an improper judgment). However, generally, if a trial court refuses to submit a properly requested issue on a vital defense that was pleaded and supported by more than a scintilla of evidence, the court of appeals will reverse. *L & F Distributors v. Cruz,* 941 S.W.2d 274, 283 (Tex.App.—Corpus Christi 1996, writ denied).

### Duty to Mitigate

In its first point of error, Gunn complains that the trial court committed harmful error by not submitting a jury question on its proposed affirmative defense of mitigation of damages or submitting its proposed instruction on mitigation. The court eventually allowed evidence to reach the jury about the settlement negotiations between Gunn and O'Byrne, holding that they were admissible as they related to the fraud claim but not as they related to the DTPA claim. However, the court did not include an instruction or a question on mitigation. This issue involves a

question of law and fact and is thus subject to the more stringent standard of review.

The parties correctly agree that a DTPA plaintiff is required to mitigate damages. *Pinson v. Red Arrow Freight Lines, Inc.*, 801 S.W.2d 14, 15–6 (Tex.App.—Austin 1990, no writ). It is true, also, that at least relevant to this requirement under the DTPA is whether the defendant tendered a settlement offer. *See* TEX. BUS. & COM.CODE ANN. § 17.505(a), (c) (Vernon 1994 and Supp.1997) (providing mechanism for admitting, to judge only, evidence of rejected settlement offers). The disagreement here centers on whether there is an absolute duty to settle a valid legal claim in order to avoid possible mental anguish damages and whether there was evidence in this case that the duty was breached.[2] If such a duty exists, and there was more than a scintilla of evidence that it was breached, then it was an abuse of discretion not to submit the question or instruction. If not, then the trial court acted within its discretion.

This precise question is a novel one in Texas. We could find only one case where the question was presented squarely, and there, the appellate court was able to avoid it. In *HOW Ins. Co. v. Patriot Fin. Serv. of Texas, Inc.*, 786 S.W.2d 533 (Tex.App.—Austin 1990, writ denied), *overruled on other grounds, Hines v. Hash*, 843 S.W.2d 464 (Tex.1992), the Austin court of appeals considered a claim that a condominium resident failed to avoid mental anguish damages caused by unrepaired defects in her condominium by refusing her insured's settlement offer. *HOW*, 786 S.W.2d at 542–3. However, the court noted that the plaintiff's evidence suggested that she suffered mental anguish *before* the settlement offer was made. *Id.* at 543. Thus the court was able to avoid determining whether such a duty exists where anguish is suffered after a settlement offer. *See id.* (stating, "[t]herefore,

even assuming HOW is correct as to Hopper's failure to mitigate ...").

 It is at least clear that a court should submit a mitigation instruction whenever the evidence raises an issue as to whether the plaintiff could have avoided, in whole or in part, his or her losses. *Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 131 (Tex.App.—Texarkana 1994), *vacated pursuant to agreement*, No. 06–92–00100–CV, 1995 WL 273592 (Tex.App.—Texarkana Mar.9, 1995); *Alexander & Alexander of Texas, Inc. v. Bacchus Indus., Inc.*, 754 S.W.2d 252, 253–4 (Tex.App.—El Paso 1988, writ denied). The burden of proving whether the plaintiff failed to do so is on the party who caused the loss. *Pinson*, 801 S.W.2d at 16. The standard is that of ordinary care, or what an ordinary prudent person would have done under the same or similar circumstances. *Sorbus, Inc. v. UHW Corp.*, 855 S.W.2d 771, 775 (Tex.App.—El Paso 1993, writ denied).

However, several cases hold that the duty to mitigate does not include a duty to surrender a valid legal claim. *Hanna v. Lott*, 888 S.W.2d 132, 138 (Tex.App.—Tyler 1994, no writ); *Crum & Forster*, 887 S.W.2d at 131. In *Crum & Forster*, the Texarkana court of appeals addressed whether a trial court had erred by requesting a jury *instruction* on mitigation where the appellees had refused to settle their suit for less than ten percent of what they ultimately paid in legal fees. The claim there was that the appellees had a duty to avoid attorney's fees by settling. The court stated, "An injured party is required under the doctrine of avoidable consequences to use reasonable diligence to minimize his losses, but he is not required to sacrifice substantial rights of his own. A party has a substantial right to defend his lawsuit." *Crum & Forster*, 887 S.W.2d at 131. The court noted that the appellee's belief in his lawsuit had been confirmed by its ultimate victory at trial. *Id.* The court

---

**2.** The parties argue at some length about whether the offer was admissible under the Texas Rules of Evidence. *See* TEX.R. CIV. EVID. 408 (excluding evidence of settlement offers to prove liability on or invalidity of claim). This argument, however, is not relevant to the discussion. Even if the offer was admissible, the question

presented here is whether a duty existed to settle that gave rise to an affirmative defense and if evidence existed that the duty was breached. In other words, the question is not *may* the offer have been admitted, but rather, *must* it have been submitted as a jury question.

also stated directly, "[T]here was no duty to mitigate by settling." *Id.*

Gunn, however, points to a case relied on by the *Crum & Forster* court, *Guaranty Abstract Co. v. Denman,* 209 S.W.2d 213 (Tex.Civ.App.—Texarkana 1948, writ ref'd). In *Denman,* the Texarkana court of appeals held that the plaintiff in a breach of certificate of title suit had no duty to mitigate by settling where the settlement amounted to a partial payment of the amount due, with the rest to be made in payments. *Denman,* 209 S.W.2d at 215. The court went on to say, however, that "[i]f Denman had been made whole by accepting above tender, it was his duty to have effected such a settlement." *Id.*

We can find no Texas case relying on this holding. However, another Texas appellate decision, *Hanna v. Lott,* provides some guidance. In *Hanna,* the appellants claimed that the plaintiff had failed to mitigate his damages by accepting a settlement offer for the full value of his automobile, which had been destroyed in an accident. *Hanna,* 888 S.W.2d at 138. The court of appeals stated, "a plaintiff need not take all possible actions which might possibly reduce the amount of his damages in an imminent lawsuit." *Id.* The court stated that the plaintiff believed his car was worth more than the sum offered by the insurance company and that, after a trial on the issue, a jury had agreed with the plaintiff. *Id.* On those facts, the court could not say that an ordinary prudent person would have settled. *Id.*

Similarly, we believe that even if the duty to avoid damages does include a duty to settle to avoid mental anguish damages, such a duty is not implicated here because Gunn Infiniti's various offers cannot have made the plaintiff whole. O'Byrne wanted a black 1993 G–20 Infiniti, undamaged and unrepaired. No offer made by Gunn Infiniti could have given that to him. Uncontroverted testimony was that the car he purchased was the last of its kind. Had he accepted the red car, with cash to get a new paint job, he would have been left with a non-factory paint job. The plaintiff's expert at trial testified that a repaint job on a new car detracts from its value. Apparently, this was unacceptable

to O'Byrne, and we cannot say that it would be acceptable to an ordinary prudent person under similar circumstances. Had he accepted his money back, he would not have been compensated for the missing air bag and, again, he would not have had his black 1993 G–20. Had he accepted the later model, a model he stated from the outset he was not interested in, he would not have had what he sought to purchase. From O'Byrne's perspective, then, the damage done to him by the sale of a defective vehicle was irreparable except through litigation. He believed he had a valid lawsuit, and the jury apparently agreed with him. On these facts, we cannot say that Gunn Infiniti met its burden to show any duty to mitigate.

**Combined Theories of Recovery**

In its second point of error, Gunn argues that the trial court erred in submitting a jury question that combined two separate theories of recovery for additional damages—knowing conduct under the DTPA and punitive damages. This is a question of law and thus must be reversed if the trial judge failed to analyze or apply the law correctly. *Walker,* 827 S.W.2d at 840. However, we find that even if the trial court erred, the error was harmless.

Question Number 2 of the jury charge, which asked the jury whether Gunn Infiniti had made knowing misrepresentations to O'Byrne, correctly defined "knowingly," under the DTPA. Question Number 3, which asked the jury whether Gunn Infiniti committed fraud in its dealings with O'Byrne, correctly defined fraud. The jury answered "yes" to both questions.

Question Number 5 was predicated on an affirmative finding of either knowing conduct or fraud. This question asked:

[w]hat sum of money, if any, in addition to actual damages should be assessed against GUNN INFINITI, INC. as additional or exemplary damages? ... In determining this amount, you may consider:

(1) The nature of the wrong,

(2) The character of the conduct involved,

(3) The degree of culpability of the wrongdoer,

(4) The situation and sensibilities of the parties concerned,

(5) The extent to which such conduct offends a public sense of justice and propriety, and

(6) The size of an award needed to deter similar conduct in the future or the net worth of the defendant.

Gunn argues that this question allowed the jury to consider elements for an award of exemplary damages in making its finding of additional damages and the instruction on knowledge in considering the award of exemplary damages. In fact, the elements listed for jury consideration are the factors traditionally considered in awarding exemplary damages. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981).

## Discussion

Gunn was able to cite no authority directly on point to support its complaint. However, it does cite three cases reversing jury questions that combine legal theories. In *Lovelace v. Sabine Consol., Inc.,* 733 S.W.2d 648 (Tex.App.—Houston [14th Dist.] 1987, writ denied), the court of appeals held that a punitive damages question that allowed the jury to answer the question upon a finding of "one or more of the foregoing theories" constituted reversible error. *Lovelace,* 733 S.W.2d at 654–5. However, that case is somewhat different from this one. In *Lovelace,* the jury awarded punitive damages where there was no independent finding of tort liability; the "one or more of the foregoing theories" language allowed them, theoretically, to award punitive damages for contract liability. *Id.* That is not the case here. Here, the jury was given a set of factors to apply to both a determination of whether additional damages should be awarded or whether exemplary damages should be awarded. There was no legally precluded ground for recovery.

In *Dawson v. Garcia,* 666 S.W.2d 254 (Tex. App.—Dallas 1984, no writ), the court of appeals reversed without remand where the jury question combined two single elements of damages allowing for a single response.

*Dawson,* 666 S.W.2d at 261. The court held that the question made it impossible to determine what award, if any, the jury made as to the respective claims. *Id.* In *Garcia,* however, the trial court submitted a damages question that attempted to encompass the damages of more than one party when not all the parties could recover under the theories listed in the question. *Id.* The court held that, because clearly some of the parties could not recover, and it was impossible to determine what portion was recoverable and what portion was not, the jury finding was tainted. *Id.*

Finally, Gunn cites *Rodriguez v. Hyundai Motor Co.,* 944 S.W.2d 757 (Tex.App.—Corpus Christi 1997, writ filed), for the proposition that it is reversible error to combine two independent grounds of recovery into a single question. However, *Rodriguez* never reaches this question. In *Rodriguez,* the appellant's argument was that a question on implied warranty was not necessary because a question on design defect took care of that issue. *Rodriguez,* 944 S.W.2d at 771. The court stated that because the two issues differed as to definition and causation, one question could not do the work of two. *Id.* at 771–2. This is not precisely our situation. The question before the court clearly presents two questions for the jurors; in other words, the jury's answer to one question is not being asked to answer an additional, different question. Instead, the question merely attempts to provide guidelines for determining additional damages by splicing those from exemplary damages on the additional damages question.

O'Byrne is also able to find no authority on point. However, O'Byrne cites *Pacific Mutual Ins. Co. v. Haslip,* 499 U.S. 1, 18–9, 111 S.Ct. 1032, 1043–44, 113 L.Ed.2d 1 (1991) for its holding that awarding additional damages without guidelines may be unconstitutional. O'Byrne notes that the *Texas Pattern Jury Charge* suggests combining the exemplary damages and additional damages instructions to avoid such a constitutional error:

In light of the constitutional concerns raised in *Transportation Insurance Company v. Moriel* [cite omitted], an instruc-

tion on the exemplary damage factors ... should be submitted with the question at PJC 110.11 [additional damages under DTPA].... Some trial courts have, without objection, given instructions similar to the definition of exemplary damages in connection with the submission of these DTPA enhancement damages.

STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES: BUSINESS, COMMERCE, EMPLOYMENT 110.11, cmt. (1997) (also citing *Haslip* ); *see Gunn Buick*, 907 S.W.2d at 632 (stating that *Texas Pattern Jury Charge* is "invaluable" guide in preparation of issues and instructions).

█ The comment, however, does not recommend what the judge did here, which was to combine theories for damages. We concede that the better course would have been to present the issues in separate, alternative questions. However, even if erroneous, this is not harmful error. In the first place, the two types of damages do not provide independent grounds of recovery in this case, as the award of both would amount to double recovery. *See Berry Property Management, Inc. v. Bliskey*, 850 S.W.2d 644, 665 (Tex. App.—Corpus Christi 1993, writ dism'd by agr.) (the award of punitive and DTPA additional damages is duplicative where defendant commits same act or technically different acts that result in a single injury). We agree with Gunn Infiniti that a finding of knowledge is not the same as a finding of fraud, or vice versa. Each, for example, has a different causation standard. Causation under the DTPA must be "producing," or a cause that, in a natural and continuous sequence, produced the damage. Causation under common law fraud must be "proximate," or that which produced the event and without which the event would not have occurred.

However, we do not find these differences relevant, because the jury was properly instructed on both causes in separate questions and answered affirmatively to both questions. The jury, therefore, could not have confused the two causes or their standards of proof.

Furthermore, the question, as written, did not permit the jury to award *both* additional and exemplary damages, which would have been impermissible. The question was predicated on a finding of DTPA violations *or* fraud and requested the jury to name a sum for additional *or* exemplary damages.

We are further guided in our holding by the supreme court's decision, *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179 (Tex.1995). In this decision, the court held that an award of additional damages under the DTPA (which the court calls "punitive" damages) must be evaluated under the same standards provided by the court to assess awards of common law punitive damages. *Haynes & Boone*, 896 S.W.2d at 183; *see Kraus*, 616 S.W.2d at 910 (outlining review standards for punitive damages). These are the same guidelines provided by the trial court here. Because we would review the punitive damages award under the same standard whether it was awarded on the basis of knowledge or on the basis of common law fraud, and because the jury answered "yes" to both issues, we cannot see the harm in this question.[3]

## POINTS OF ERROR THREE THROUGH EIGHT: SUFFICIENCY OF THE EVIDENCE

In points of error three through nine, Gunn complains that the jury's findings on economic loss, mental anguish, knowledge, fraud, and exemplary damages were not supported by legally, or alternatively, factually sufficient evidence.

### Standard of Review

█ When reviewing a ruling for legal sufficiency, the appellate court looks at only the evidence supporting the finding. A no evidence point will be sustained only when (1) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evi-

3. Had the jury answered "no" to either the fraud or the knowledge question and "yes" to the other, and then proceeded to award additional or exemplary damages under this question, the issue might be resolved differently.

dence conclusively establishes the opposite of the vital fact. Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361, 362–3 (1960).

When reviewing for factual sufficiency, a reviewing court looks at all the evidence and determines whether the finding was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

### Economic Loss

In its third point of error, Gunn asserts that the jury's finding on economic loss was against the great weight and preponderance of the evidence and not supported by factually sufficient evidence because it combines diminution in value with cost of repairs and because it includes the cost to install an air bag in a vehicle that never could have been sold with an air bag.

The DTPA allows for recovery of actual losses, as defined by common law. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex.1980), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474. Actual damages are measured by the difference between the value of that which was represented to the consumer and that which the consumer actually received. *Leyendecker & Assoc., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex.1984). If repairs are attempted, the standard should be the reasonable cost of repairing the product from its condition after the attempted repairs. *Raye v. Fred Oakley Motors, Inc.*, 646 S.W.2d 288, 291 (Tex. App.—Dallas 1983, writ ref'd n.r.e.).

Generally, Texas law does not permit a double recovery. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex.1995). However, the Texas Supreme Court has allowed plaintiffs to recover for both diminished value and cost of repair when "the diminution is calculated based on a comparison of the original value of the property and the value after repairs are made." *Woodruff*, 901 S.W.2d at 441; *Terminix Internat'l, Inc. v. Lucci*, 670 S.W.2d 657, 662 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

Here, O'Byrne's expert, Chris Hernandez, testified that the actual value of the car at the time of purchase, with the prior repairs, was about $3,000 less than what O'Byrne paid. The expert testified that he would apply this discount even if proper repairs were made on the car, because a repaired new car is simply not worth what an unrepaired new car is worth.

We believe that, on the basis of this testimony, recovery for both is permissible under the *Woodruff* standard. Gunn claims that Hernandez's testimony speaks only to the diminished value of the vehicle if the repairs made by Gunn Infiniti had been proper, rather than to any future repairs, and thus the *Woodruff* rule does not apply. This argument is somewhat difficult to comprehend. If the repairs at Gunn had been proper, later repairs would not be necessary. What Hernandez said is that, even if Gunn had gotten it right, the car would have been worth $3,000 less than what O'Byrne paid for it.

Gunn complains additionally, however, that O'Byrne should not be able to recover for the missing air bag, because cars of that make, model, and year, did not come with air bags and the plaintiff cannot recover for something he never could have received. This argument defies common sense. O'Byrne was told the car had an air bag. Worse, the car actually had an air bag sticker on the inside of the hood. O'Byrne cannot be faulted because that particular model did not come with an air bag. He is entitled to his car (or the value of his car) *as it was represented*, which would include an air bag (or the value of an air bag).

### Mental Anguish

In its fourth point of error, Gunn claims that the jury's mental anguish finding was not supported by legally or, alternatively, factually sufficient evidence.

An award of mental anguish damages will survive a legal sufficiency challenge if the plaintiff introduces direct evidence showing "the nature, duration, or severity of [his] anguish, thus establishing a substantial disruption in the Plaintiff's daily routine.... When claimants fail to present direct evi-

dence of the nature, duration, or severity of their anguish, we apply traditional "no evidence" standards...." *Woodruff,* 901 S.W.2d at 444.

 O'Byrne has met the legal sufficiency standard. He introduced direct testimony that he had suffered for four years, that he suffered grief, disappointment, indignation, despair, and public humiliation. He testified that he could barely drive the car and that his friends ridiculed him. This evidence is legally sufficient to uphold the jury's verdict.

 We also believe the evidence to be factually sufficient. This court has held that "mental anguish includes keen and poignant mental suffering ... a plaintiff must show more than mere worry, vexation, anxiety, embarrassment, or anger." *Roberts v. U.S. Home Corp.,* 694 S.W.2d 129, 136 (Tex. App.—San Antonio 1985, no writ). O'Byrne presented direct evidence of emotional distress. This evidence was barely refuted by Gunn. The most serious attack on the mental damages claim came in Gunn's cross examination of O'Byrne, where O'Byrne admitted that he and his friends had admired the car until they learned of the undisclosed repair work. This hardly refutes the evidence that, once O'Byrne did learn of the repairs, the knowledge caused him emotional distress.

Gunn complains that the mental anguish claim is "contrived." However, the supreme court has stated, "Jurors are best suited to determine whether and to what extent the Defendant's conduct caused compensable mental anguish by referring to their own experience." *St. Elizabeth Hosp. v. Garrard,* 730 S.W.2d 649, 654 (Tex.1987), *overruled on other grounds, Boyles v. Kerr,* 855 S.W.2d 593 (Tex.1993). The jury's finding here was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

**Fraud and Knowledge**

 In its fifth and sixth points of error, Gunn claims that the jury's finding of common law fraud was not supported by either legally or factually sufficient evidence. There is no merit to this claim. The elements of common law fraud are (1) that a material misrepresentation was made (2) that the misrepresentation was false; (3) that the misrepresentation was false at the time it was made; (4) that the speaker knew of the falsity or made the statements recklessly; (5) that the misrepresentation was made with the intention that it be acted upon by the recipient; (6) that the recipient did act in reliance; and (7) that the recipient was injured as a result of that reliance. *Shannon v. Law–Yone,* 950 S.W.2d 429, 433 (Tex. App.—Fort Worth 1997, writ denied). Misrepresentation under the DTPA can be proven by showing that a material misrepresentation was made and was a cause-in-fact of the plaintiff's damages. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995).

 Infiniti employees admitted at trial that it was company policy not to disclose lot damage unless the customer asked specifically if such damage had occurred. O'Byrne showed at trial that two Gunn representatives told him that the car he was purchasing had had no repair work or body damage. His evidence also showed that these statements were false and, moreover, that the representatives knew when they were making them that the representations were false. It was admitted at trial that the two people who dealt directly with O'Byrne knew about the door damage and that "some employees" at Gunn Infiniti knew about the traded hood. O'Byrne testified that he had been concerned about lot damage and that he probably would not have purchased the car had he known about the damage. Finally, evidence demonstrated that O'Byrne had been financially damaged by his reliance on the misrepresentations.

 Gunn argues that, because the defendants admitted only to knowing about minor "door ding" repair and hood imperfections and that they believed these were relatively minor, the information they withheld was not material. Gunn further argues that O'Byrne's real complaint concerns repairs done not by Gunn Infiniti but by Gunn Oldsmobile. Finally, Gunn argues that O'Byrne didn't really care about the body damage; he was more concerned with getting the exact car he wanted. We find

these arguments unconvincing. First, it is clear that *someone* at Gunn Infiniti knew about the more substantial repairs. As O'Byrne's counsel colorfully suggested at oral argument, vehicles do not just drop from the sky onto sales lots. A vice president of Gunn Infiniti admitted at trial that someone at the company would had to have known about the repairs performed at Gunn Oldsmobile. Second, O'Byrne testified that the information withheld from him *was* material to his decision to purchase the car. O'Byrne was apparently quite upset about the damage Gunn Infiniti admittedly knew about and lied about. Finally, even if the damage were limited to the door ding and hood imperfection, the latter defect resulted in Gunn Infiniti putting a new hood, from a later model car, on the vehicle. We cannot say that this was not a material fact. It was clearly material *to O'Byrne*.

### Exemplary Damages

In points of error seven and eight, Gunn complains that the evidence was legally insufficient to merit a submission of a question on exemplary damages and that the evidence was factually insufficient to support the jury's award of those damages.

The jury gave affirmative answers to both a finding that Gunn acted knowingly under the DTPA and that Gunn had committed common law fraud. Jury question No. 5 allowed the jury to award additional or exemplary damages on either basis.

■■■■ In order for the jury to assess punitive damages under the DTPA, there must be a showing that the defendant acted "knowingly." TEX. BUS. & COM.CODE § 17.50(b)(1) (Vernon 1994 and Supp.1997). "Knowingly" means "actual awareness, at the time of the complained-of act or practice, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim." *Id.* at § 17.45(9). Evidence at trial showed that Gunn's representatives made knowing and material misrepresentations to O'Byrne about a door ding and about a replaced hood. The jury found that they had done so. Further, while the saleswoman and the manager denied any knowledge of the more extensive repairs at Gunn Oldsmobile,

an Infiniti representative testified that someone at Infiniti must have known about them. We cannot hold that this "someone's" knowledge is unreachable because this "someone" never talked to O'Byrne. Thus, the submission of the issue on additional damages is supported by legally and factually sufficient evidence, as is the finding of additional damages by the jury.

■■■ As for exemplary damages based on the common law fraud claim, the standard has been set in *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10 (Tex.1994). In *Moriel*, the supreme court held that punitive damages are available only in exceptional cases. *Id.* at 18. They are levied only to punish defendants for "outrageous, malicious, or otherwise morally culpable conduct." *Id.* at 16. When determining whether to award punitive damages, a jury is to consider the nature of the wrong, the character of the conduct, the degree of culpability, the situation and sensibilities of the parties, the offensiveness of the conduct to a public sense of justice and propriety, and the size of an award needed to deter similar future conduct. *Kraus*, 616 S.W.2d at 910.

■■■ Gunn argues that the trend is away from awarding exemplary damages on the basis of a common law fraud finding alone, without an instruction defining what kind of conduct would give rise to a finding of punitive damages. In *Northside Chevrolet Co. v. Beekman*, 80 S.W.2d 1071 (Tex.Civ.App.—Fort Worth 1935, no writ), a case cited by Gunn, the reviewing court upheld a finding of punitive damages based on fraud where it found additionally that the defendant had made a *wilful* false representation. *Beekman*, 80 S.W.2d at 1071. Gunn suggests that, in order to find punitive damages in a fraud case, such wilfulness must exist. Even if we were to hold that this is the standard, there is evidence showing wilful misrepresentation: Gunn representatives knew about body damage and repairs, both relatively minor and more extensive, and in spite of repeated questions by O'Byrne, determined for themselves that those repairs were not material and did not need to be disclosed. The fact that some employees were not aware of

the extent of the repairs performed does not aid Infiniti. Rather, it suggests that those who *should* have known—individuals involved in direct sales to customers—*did not* know, and it raises questions as to why this should be.

There was some testimony that Gunn Infiniti had a policy of not disclosing repairs. Although Gunn representatives testified that this policy only addressed minor lot damage and that employees were instructed to disclose even this when asked, a jury was entitled to find that any non-disclosure policy constituted outrageous conduct. Further, the Gunn representatives' unilateral determination that a hood replacement did not constitute material repair that a customer should know about may also be viewed as outrageous. This is conduct the jury may have wished to deter through an award of exemplary damages.

### POINT OF ERROR NINE: ATTORNEYS' FEES

In its ninth point of error, Gunn asks that if this court accepts any of its arguments, the award of attorneys' fees should be modified by recalculating the total damages and multiplying them by 33 percent, the fraction awarded O'Byrne by the jury. O'Byrne concedes this point. Because we have rejected Gunn Infiniti's claims, we do not reach this point.

### CONCLUSION

Gunn Infiniti seeks to escape liability by claiming that O'Byrne might have reduced his damages by settling for something less than the *exact thing* that brought him to San Antonio in the first place, the car that Infiniti representatives assured him they could deliver in perfect condition. We find that O'Byrne had no duty to settle for less than what he was promised. Likewise, Gunn's remaining points of error give us no reason to question the determination of the jury, and we affirm the judgment.

Dissenting opinion by ANGELINI, J.

ANGELINI, Justice, dissenting.

Because I would hold that the trial court should have submitted a mitigation instruction to the jury, I respectfully dissent.

O'Byrne testified that, shortly after he purchased the vehicle, he contacted Gunn and discovered the car had, in fact, sustained damages. Gunn attempted to resolve O'Byrne's dissatisfaction with the vehicle in four different ways: (1) Gunn offered to find O'Byrne another black 1993 Infiniti G-20 exactly like the one he had purchased; O'Byrne accepted, but Gunn was unable to locate an identical car; (2) Gunn offered O'Byrne a red 1993 Infiniti G-20; when O'Byrne refused, Gunn offered to paint it and pay him some money; (3) Gunn offered to refund his money minus depreciation; and (4) Gunn offered O'Byrne a 1993–1/2 model, a newer car.

There is no doubt that O'Byrne did not accept Gunn's offers, with the exception of the offer of an identical car which, unfortunately, proved to be an impossibility. And, because of his refusal, O'Byrne was able to make a claim for damages he would not have otherwise incurred. The issue is whether O'Byrne was required to accept Gunn's offers. In other words, did his refusal to accept entitle Gunn to a jury instruction on the failure to mitigate damages.

It is clear that a DTPA claimant is required to mitigate damages and that the trial court should submit a failure to mitigate instruction when the evidence raises the issue whether the claimant could have avoided some or all of his losses. *Pinson v. Red Arrow Freight Lines, Inc.*, 801 S.W.2d 14, 15 (Tex.App.—Austin 1990, no writ). Further, a claimant is required to mitigate if his damages can be avoided with only slight expense and reasonable effort. *Lester v. Logan*, 893 S.W.2d 570, 577 (Tex.App.—Corpus Christi 1994), *writ denied per curiam*, 907 S.W.2d 452 (Tex.1995).

Although recognizing the general rules of mitigation damages, the majority concludes the doctrine of mitigation is not applicable in this case because a duty to mitigate does not include a duty to settle. Under the majority's holding, the refusal to settle can never

be considered a failure to mitigate. I would hold, however, that the refusal to settle may be considered a failure to mitigate under certain facts.

The majority cites three cases, relying on two and rejecting the third. The two cases the majority relies upon are not precisely on point, whereas the one case the majority declines to follow is. *Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103 (Tex.App.—Texarkana 1994), *vacated pursuant to agr.*, No. 06–92–00100–CV, 1995 WL 273592 (Tex. March 9, 1995) is not instructive because the failure to mitigate the claim was made against a defendant who had incurred attorney's fees by refusing to settle the case. The court stated "[a] party has a substantial right to defend his lawsuit" and he is not required to sacrifice substantial rights. *Id.* at 131. The court specifically held that a party who believes he is right has no duty to settle just to avoid attorney's fees. *Id.* The case before us does not involve a defendant's duty to settle to avoid attorney's fees. *Hanna v. Lott*, 888 S.W.2d 132 (Tex.App.—Tyler 1994, no writ), is likewise inapplicable. In that case, the defendant claimed that the evidence established the plaintiff failed to mitigate his damages by failing to accept a settlement offer. *Id.* at 138. The court did not hold that failure to settle could not amount to failure to mitigate. The trial court was merely unable to conclude that, as a matter of law, an ordinary prudent person would settle when he disagrees with the insurance company regarding the value of his car. *Id.* The third case, which the majority rejects, is *Guaranty Abstract Co. v. Denman*, 209 S.W.2d 213 (Tex.Civ.App.—Texarkana 1948, writ ref'd). In *Denman*, the court held the plaintiff was under no duty to settle because he would be required to sacrifice a substantial right—in this case the defendant owed the plaintiff cash, but offered to pay a portion of it by tendering an unsecured note. *Id.* at 215. The court further stated, however, that he would have a duty to settle if, by accepting the offer, he would have been made whole. *Id.* I agree with the court's reasoning in *Denman* and would hold that where the defendant's offer in resolution of a claim makes the claimant substantially whole, the issue of whether the claimant failed to mitigate his damages has been raised and the

trial court is obligated to submit a failure to mitigate instruction to the jury.

I further disagree with the majority's holding that, even if the failure to mitigate includes a duty to settle, Gunn's offers in this case would not have made O'Byrne whole. The majority concludes that, because it was impossible for Gunn to provide O'Byrne with an identical vehicle, O'Byrne could not be made whole except through litigation. If this were the case, an offer to resolve a dispute involving any one-of-a-kind product could always be rejected and the plaintiff could continue to incur damages even if the offer, if accepted, would make him economically whole. Had a black 1993 Infiniti G–20 been available, Gunn would have provided it to O'Byrne and there would have been no further damages and no lawsuit. But O'Byrne should not be allowed to insist Gunn perform the impossible while continuing to incur damages merely because he purchased a one-of-a-kind item nor should Gunn be penalized because of it. The fact remains that Gunn was in an impossible position—it was a physical impossibility for Gunn to provide O'Byrne with an identical car, so they offered alternatives, at least one of which would arguably make him substantially whole because it was economically equivalent to the original vehicle. When O'Byrne refused Gunn's offers, Gunn was doomed to have the case decided by a jury rather than by negotiation and O'Byrne was in a position to increase the value of his claim by continuing to own and drive the vehicle. I believe the trial court's refusal to include the mitigation instruction was error. I would further hold it was harmful. Perhaps the jury would have found that O'Byrne acted reasonably in refusing Gunn's offers; however, they might also have found O'Byrne did not act as an ordinary prudent person would have under the same or similar circumstances. But there was no instruction to the jury allowing them to consider O'Byrne's refusal of Gunn's offers as a failure to mitigate his damages.

I would reverse and remand for a new trial.